UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In Re:                                    :
                                          :
AEM, INC.                                 :        Case No. 6:08-bk-04681-KSJ

**UNITED STATES' MOTION TO INTERVENE
AND STAY INSTANT CASE[1]**

The United States of America, by and through the undersigned Assistant

United States Attorney, pursuant to Fed. R. Civ. P. 24,[2] moves this Court to allow

the United States to intervene in this matter to obtain a stay of the instant case

until the resolution of the criminal prosecution of Frank L. Amodeo, Case No.

08-cr-176-Orl-28GJK, and the continuing investigation of the Debtor and/or its

agents, and in support thereof, states as follows:

**Background**

1.       Since August 2006, the United States has been investigating debtor

AEM, Inc.; related debtors Mirabilis Ventures, Inc. (Mirabilis) and Hoth Holdings

LLC; Frank L. Amodeo; and others for, <u>inter alia</u>, a systematic and pervasive theft

of payroll taxes due to the Internal Revenue Service (IRS) in the approximate

amount of $182 million, as well as conspiracy, wire fraud, and obstruction of an

agency proceeding.

2.       The organizations which stole the funds are known as Professional

Employee Organizations (PEOs), which provide comprehensive and integrated

resource management services, including payroll services, to small and

---

[1]  Identical motions are being filed in two related bankruptcy cases: <u>In Re: Hoth Holdings, LLC</u> (Hoth Holdings), Case No. 6:08-bk-04328-KSJ, and <u>In Re: Mirabilis Ventures, Inc.</u> (Mirabilis), Case No.  6:08-bk-04327-KSJ.

[2]  Fed. R. Civ. P. 24 applies in bankruptcy proceedings.  Fed. R. Bankr. P. 7024.

medium sized companies.  According to the contracts signed by the clients when the PEOs started providing services to the clients, the PEOs became the co-employer of its clients' employees and assumed the liabilities and responsibilities for reporting and paying over to the Internal Revenue Service the payroll wages and the payroll taxes of the worksite employees.

3.      On April 25, 2008, the United States filed a Verified Complaint for Forfeiture In Rem against the following real property, including any buildings, appurtenances, and improvements thereon, located at: a) 614 Lake Avenue, Orlando, Fl., b) 709 Euclid Avenue, Orlando, Fl.; c) 1159 Delaney Avenue, Orlando, Fl.; d)  3801 Carolina Avenue, Richmond, Virginia; e) 4905 Research Drive, Huntsville, Al.; and proceeds from the sale of 509 Riverfront Parkway, Chattanooga, Tn.[3]

4.      On April 24, 2008, United States Magistrate Judge David A. Baker issued seizure warrants for the following items:

a.      2006 Black Harley Davidson Motorcycle,
         VIN #1HD1BWB156Y077592;

b.      2006 Lexus RX 400, VIN #JTJHW31U160026262

c.      2006 Mercedes Benz CLS 500C Coupe,
         VIN #WDDDJ75X46A032858;

d.      Gates Learjet Model 25D, Aircraft Number 4488W;

e.      $253,487.45 in proceeds seized from the trust account of the law firm of Balch Bingham LLP;

f.      $101,393.86 in proceeds seized from the trust account of the law firm of Shutts & Bowen;

g.      $42,419.72 in proceeds seized from the trust account of the law firm of Mateer and Harbert;

---

[3] Subsequently amended on April 28, 2008.

h.    $100,000.00 in proceeds seized from the trust account of the law firm of Maher, Guily, Maher PA;

I.    $105,922.96 in proceeds seized from the trust account of the law firm of Martin, Pringle, Oliver, Wallace, & Baur LLP;

j.    $50,000.00 in proceeds seized from the trust account of the law firm of Bieser, Greer & Landis LLP;

k.    $8,518.30 in proceeds seized from the trust account of the law firm of Allen, Dyer, Doppelt, Milbrath & Gilchrist PA;

l.    $25,000.00 in proceeds seized from the trust account of the law firm of Valenti, Hanley & Robinson PLLC;

m.    $10,000.00 in proceeds seized from the trust account of the law firm of Brown, Stone, & Nimeroff LLC;

n.    $21,900.00 in proceeds seized from the trust account of the law firm of Hunt Rudd PA;

o.    $41,029.54 in proceeds seized from the trust account of the law firm of Ford & Harrison PA;

p.    $12,528.51 in proceeds seized from the trust account of the law firm of Broad & Cassel;

q.    $20,754.19 in proceeds seized from the trust account of the law firm of Latham, Shuker, Barker, Eden, & Beaudine LLC; and

r.    $13,100.99 in proceeds seized from Fifth Third Bank Account No. 7440599020 in the name of Soone Business Development.

These items were seized and are in the possession of the United States.

5.    On May 28, 2008, related debtors Mirabilis and Hoth filed for bankruptcy in the Middle District of Florida.  Debtor AEM filed for bankruptcy on June 5, 2008.

6.    On August 6, 2008, Frank L. Amodeo, the person who controlled debtor AEM and related debtors Mirabilis and Hoth Holdings until the filing of the related bankruptcy cases, was indicted for conspiracy, failure to remit payroll taxes, wire fraud, and obstruction of an agency investigation.  Case No. 08-cr-

176-Orl-28GJK.[4]  Exhibit 1.  The Indictment contains forfeiture provisions which seek to forfeit, <u>inter alia</u>, to the United States all assets of debtor AEM and related debtors Mirabilis and Hoth Holdings.  If those assets are forfeited, they will become property of the United States and will not remain in the three related bankruptcy estates.[5]

7.     The United States, therefore, requests that this Court permit the United States to intervene for the purpose of staying the bankruptcy proceedings in the instant related cases.

## MEMORANDUM OF LAW

### A.     INTERVENTION

Federal Rule of Civil Procedure 24(a)(2) provides that a party may intervene as a matter of right in an action when the party "claims an interest related to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest . . . ."  In the absence of a right to intervention, Rule 24(b)(2) provides the Court with broad discretion to permit intervention "when [the] applicant's claim or defense and the main action have a question of law or fact in common."  Rule 24 applies in bankruptcy proceedings. Fed. R. Bankr. P. 7024.

---

[4]  Returned in open court on August 6, 2008, but not docketed until August 7, 2008.

[5]  Additionally, the criminal investigation of debtor AEM, related debtors Mirabilis and Hoth Holdings, and other companies and individuals is ongoing.  There are hundreds of witnesses involved and approximately 2,200 victim companies and 29,700 victim employees of the wire fraud.  The United States is still in the process of reviewing approximately 3,000,000 documents, 3,000,000 e-mails, and 5,000 hours of videotape. These documents encompass the records of approximately eighty-five (85) companies.

Courts have granted intervention in bankruptcy proceedings pursuant to Rule 24 when there is a question of law or fact in common. <u>See S.E.C. v. U.S. Realty & Imp. Co.</u>, 310 U.S. 434, 459 (1940). In addition, Fed. R. Bankr. P. 2018(a) provides that the court may permit "any interested entity to intervene generally or with respect to any specified matter." Here, the United States submits that this Court should allow the United States to intervene under either prong of Rule 24 or under Rule 2018(a) because, as described below, a stay is necessary to prevent the dissipation of assets, as well as discovery in the instant case from undermining the criminal prosecution and ongoing criminal investigation, and because no injury will be suffered by the parties as a result of the stay. Furthermore, as described below, there are common issues of law or fact in the bankruptcy, the criminal case, including the forfeiture provisions, and the related civil forfeiture case. The United States' ability to protect its interest in the assets of the debtor companies would be seriously impaired by allowing the bankruptcy proceedings to continue.

**B.    STAY OF BANKRUPTCY PROCEEDINGS**

It would be in the interest of judicial economy and economy of all the parties involved to stay the bankruptcy proceedings until the resolution of the criminal case and ongoing criminal investigation. The results of the criminal proceedings will have a significant effect on the bankruptcy proceedings, and may even render the bankruptcy proceedings moot. The assets which comprise the bankruptcy estate in the three related bankruptcy cases are among the assets subject to forfeiture in the criminal case and parallel civil forfeiture action.

The power to stay proceedings is incidental to the power of every court to control the disposition of the cases on its docket with economy of time and effort

for itself, counsel, and litigants.  <u>Landis v. North American Co.</u>, 299 U.S. 248, 254

(1936).  Pending parallel or related criminal proceedings can constitute a prudent

reason to stay civil proceedings.  <u>Microfinancial Inc. v. Premier Holidays</u>

<u>International, Inc.</u>, 385 F.3d 72, 77 (1st Cir. 2004).  Civil proceedings can be

delayed at the request of the prosecution or the defense.  <u>U.S. v. Kordel</u>,

397 U.S. 1, 12 n.27 (1970).

A court must decide whether to stay civil proceedings in the face of

parallel criminal proceedings on a case by case basis, <u>Microfinancial</u>, 385 F.3d at

78, and "in light of the particular circumstances and competing interests involved

in the case."  <u>Federal Savings & Loan Insurance Corporation v. Molinaro</u>, 889

F.2d 899, 902 (9th Cir. 1989) (<u>citing</u> <u>S.E.C. v. Dressler Indus.</u>,

628 F.2d 1368, 1375 (D.C. Cir. 1980)).  A court may decide that judicial economy

is best served by a stay of civil proceedings when the resolution of the criminal

case could "moot, clarify, or otherwise affect various contentions in the civil

case."  <u>U.S. v. Mellon Bank</u>, 545 F.2d 869, 873 (3d Cir. 1976) (<u>citing</u> <u>Texaco Inc.</u>

<u>v. Borda</u>, 383 F.2d 607, 608-09 (3d Cir. 1967)).

In determining whether to stay civil proceedings in the face of related

criminal proceedings, the Court should balance the following considerations:

1.    the private interest of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed;

2.    the private interests of, and burden on the defendant;

3.    the convenience to the courts;

4.    the interest of persons not parties to the civil litigation; and

5.    the public interest.

<u>Microfinancial</u>, 385 F.3d at 78; <u>Molinaro</u>, 889 F.2d at 903.  These same factors apply in considering a stay of bankruptcy proceedings.  <u>See, e.g., In re Ross</u>, 162 B.R. 860, 861 (D. Idaho 1993).

Here, the following factors weigh in favor of a stay:

1.      The interests of the three related debtor companies will not be negatively affected by a stay.  With the return of the indictment against Amodeo, the case for staying this case is stronger than if an indictment had not yet been returned.  <u>Dressler</u>, 628 F.2d at 1376 (the strongest case for staying civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter).  While Amodeo is no longer controlling the related debtors, his involvement in the bankruptcy cases will be required, especially where, according to Mr. Cuthill, Amodeo will be the subject of at least one lawsuit which is an asset of the bankruptcy estates.  This may very well require Amodeo to testify at a deposition or other bankruptcy hearing.  His defense of his criminal case may well be compromised, and it would be in his best interests to invoke his Fifth Amendment privilege.[6]  As the <u>Dressler</u> court stated:

> The non-criminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial or otherwise prejudice the case. (Footnote deleted). If delay of the noncriminal proceeding would not seriously injure the public interest, a court may be justified in deferring it.

<u>Dressler</u>, 628 F.2d at 1376.

---

[6]    At the request of Amodeo's counsel, the United States will soon be filing a motion to stay the civil forfeiture proceeding in order to avoid having discovery in that case infringe on the defendant's Fifth Amendment rights.

In addition, the fact that an indictment has been returned means the bankruptcy proceedings will not be stayed for an indefinite period of time, as:

1.      the criminal proceedings have already been initiated and will proceed with the speed constitutionally required to conform with a defendant's right to a speedy trial.  18 U.S.C. § 3161, et seq.; and

2.      the investigation is scheduled to be completed within four to six months.[7]

In either event, the related debtors' respective rights will not be altered during these time periods.

The related debtors, though opposed to a stay, may very well benefit from one, because all the issues involving the three related debtor companies may be resolved in one trial, saving the time and resources of all the parties involved. Furthermore, the three related debtor companies will not have to bear the burden of handling complicated bankruptcy proceedings while Amodeo simultaneously mounts an intensive criminal defense in a very complicated criminal trial.  See, e.g., Texaco v. Borda, 383 F.2d at 608-09 (civil antitrust case stayed until after the criminal antitrust trial).

2.      The negative impact on the United States if the bankruptcy is permitted to continue will outweigh any burden on the three related debtor companies.  The facts critical to the bankruptcy and criminal proceedings are closely related and may even be identical, especially as to the assets of the bankruptcy estates.  Related debtors Mirabilis, AEM and Hoth Holdings are

---

[7]  A pre-indictment stay is particularly appropriate where both the civil and criminal charges arise from the same remedial statute such that the criminal investigation is likely to vindicate the same public interest as would the civil suit. See Brock v. Tolkow, 109 F.R.D. 116 (E.D.N.Y.1985) (civil and criminal ERISA violations).

presently expending money for related debtor Mirabilis' president, William

Cuthill,[8] two other experts, and have filed requests with the Court to hire the law

firm of Lantham, Shuker, et al.  It appears that the only ones benefitting, or who

will benefit, from these bankruptcy cases in the immediate future are Mr. Cuthill,

the attorneys, and any experts hired.  The funds expended[9] may reduce the

amount of the funds available for forfeiture with possibly no benefits to any

creditors.[10]

This case may well impact other individuals.  For example, related debtor

Mirabilis, through two lawsuits by RKT Constructors, Inc.,[11] has received money

---

[8]  Mr. Cuthill is being paid an hourly amount as related debtor Mirabilis'
president.  In fact, he appears to be operating not as an officer, but as a trustee
without having been appointed a trustee.  He has signed documents on behalf of all
three related debtors.

[9]  The expenditure of related debtor Mirabilis funds is particularly problematic
since Mr. Cuthill and counsel for related debtor Mirabilis have been on notice since
at least April 25, 2008 –  when twenty-two seizure warrants were issued for assets of
related debtor Mirabilis-related entities and Amodeo and the civil forfeiture complaint
was filed against real property owned by related debtor Mirabilis-related entities and
Amodeo – that the government was alleging that all of related debtor Mirabilis'
assets were traceable to Amodeo's massive fraud scheme, and as such were
subject to forfeiture.  Pursuant to both 21 U.S.C. § 853(n)(6)(B) (criminal forfeiture
statute governing third party claims) and 18 U.S.C. § 983(d)(3)(A) (civil forfeiture
statute governing third party claims), any party who asserts a property interest
acquired after the conduct giving rise to the forfeiture has taken place can only
establish that he has an interest superior to that of the United States if the party can
establish by a preponderance of the evidence that he was a bona fide purchaser or
seller for value (including the seller of professional services) and at the time of
transaction was reasonably without cause to believe the property was subject to
forfeiture.  The United States is currently considering whether to seek forfeiture of
the funds already distributed to Mr. Cuthill, the law firm of Lantham, Shuker, et al.,
and any other third parties who have received money from related debtor Mirabilis
despite having knowledge that such funds were subject to forfeiture.

[10]  The United States has serious reservations concerning the legitimacy of
some of the claims listed in the initial bankruptcy filings.

[11]  Related debtor Mirabilis purchased RKT Constructors, Inc.

from the settlements from those two cases.[12]  At the 341 hearing, it was clear that

those funds were being used to initially fund the case.  The contract for that

purchase designated that, in the event of the settlement of those two lawsuits,

the first $600,000 was to be paid to the prior owners, Robbie Roberts and Del

Kelley; however, no money has been turned over to them, despite the fact that

the funds are not a part of the related bankruptcy estates.  Rather, related debtor

Mirabilis has improperly retained the settlement money from the RKT

Constructors litigation and is presently dissipating those funds.  To say the least,

this dissipation of the settlement funds is unfairly impacting Robbie Roberts and

Del Kelley.

      Moreover, the defendants in the criminal proceedings could attempt to

take unfair advantage of the broad civil discovery rules to the detriment of the

United States and its witnesses.  See Campbell v. Eastland, 307 F.2d 478, 487

(5th Cir. 1962); Twenty First Corp v. LaBianca, 801 F. Supp. 1007, 1009

(E.D.N.Y. 1992) (granting stay, in part, because "[allowing civil discovery to

proceed . . . may afford defendants an opportunity to gain evidence to which they

are not entitled under the governing criminal discovery rules").  The Court does

not need to find a specific intent of wrongful use of the civil discovery rules to

grant a stay.  Integrated Generics, Inc. v. Bowen, 678 F.Supp. 1004, 1009

(E.D.N.Y. 1988).  The requested stay would eliminate the possibility of improper

use of the broader civil discovery rules.

      In addition, the United States expects that most of the assets of related

debtor Mirabilis, AEM, and Hoth Holdings will be forfeited to the United States as

---

      [12]  These funds are not subject to forfeiture since they actually belong to the
previous owners based on conduct completed before the purchase by related debtor
Mirabilis.

a result of the criminal and civil forfeitures, resulting in these related bankruptcy estates ultimately having none, or at the most, a very few assets.[13]

These assets are not assets which Mr. Cuthill will be able to recover. A party seeking to assert an interest in assets subject to forfeiture can neither intervene in the criminal case nor commence a separate action to adjudicate their alleged rights. 21 U.S.C. § 853(k). Section 853(k) specifically provides that all third parties with an interest in forfeitable property are limited to the ancillary process under 853(n) and that no one claiming an interest in alleged forfeited property may:

> (1)  intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this subchapter; or
>
> (2)  commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

*Id.*. Thus, a third party has the sole judicial remedy of petitioning the district court for a hearing to adjudicate the validity of his alleged interest in the property after the order of forfeiture is entered. *See* 21 U.S.C. § 853(n); see a United States v. Gilbert, 244 F.3d 888, 910 n.48 (11th Cir. 2001) (ancillary proceeding is the "exclusive means" for third parties to asset claims to forfeited property); United States v. Kramer, 912 F.2d 1257, 1260-61 (11th Cir. 1990) ("a third party, who claims an interest in property forfeited . . . in a criminal proceeding, has the *sole* remedy of petitioning the district court for a hearing [under § 853(n)]") (emphasis added). In light of the clear and unambiguous language of section 853(k), courts have held that bankruptcy trustees are not entitled to request turnover of seized

---

[13] The majority of the assets, for example, in the related debtor Mirabilis bankruptcy, are lawsuits, which are subject to forfeiture in the criminal case.

assets.  <u>See In re Global Vending, Inc.</u>, Case Nos. 04-23562-BKC-PGH & 04-2368-BKC-PGH-A, 2005 WL 2451763, at *2 (Bankr. S.D. Fla. June 1, 2005) (bankruptcy trustee barred from filing a turnover action against the government after an indictment providing for the forfeiture of subject assets was returned); <u>see also Re Petition of Smouha</u>, 136 Bankr. 921 (1992) (creditors exclusive remedy to challenge federal forfeiture was in the ancillary proceeding; criminal forfeiture could not be enjoined by the bankruptcy court), <u>appeal dismissed without op.</u>, 979 F.2d 845 (2nd Cir. 1992).

While these cases do not discuss the application of the automatic stay, they implicitly suggest that criminal forfeiture actions are exempted from the stay. This makes sense since "[t]he purpose of bankruptcy is to protect those in financial, not moral, difficulty." <u>Barnette v. Evans</u>, 673 F.2d 1250, 1252 (11th Cir.1982).  For that reason, more than one court has alluded to the lack of jurisdiction for a bankruptcy court to interfere with criminal proceedings, including sentences of restitution. <u>See In re Dahlman</u>, 304 B.R. 892, 894-95 (Bankr. M.D. Fla. 2003) (denying debtor's request to invalidate a lien placed against his house as part of his criminal sentence; the bankruptcy court refused to take any action to "affect the restitution and forfeiture determined by the District Court for the Eastern District of Wisconsin"); <u>see also Bryan v. Rainwater</u>, 254 B.R. 273, 278 (Bankr. N.D. Ala. 2000) ("The plain language and structure of [§ 362] in its entirety indicate that the continuation of a criminal proceeding is not subject to the automatic stay, notwithstanding the fact that the proceedings might involve an attempt to collect, assess, or recover a claim.").  While Mr. Cuthill is new to his position at related debtor Mirabilis and the old regime is no longer in place,

Related debtor Mirabilis remains a corporation which was funded with stolen payroll tax money.

The requested stay would prevent these assets from being prematurely divided up and/or taken from the debtor companies during bankruptcy proceedings, only for them to be forced to be returned to the United States at the conclusion of the criminal trial (assuming that they still exist at that point).

It would be in the best interest of economy for the United States and all of the parties to the related bankruptcies to stay the bankruptcy proceedings until the criminal case and the criminal and civil forfeitures are resolved, so the parties' resources will not be wasted on a bankruptcy proceeding that may become unnecessary upon resolution of those matters.

3.      Judicial economy will be served by the proposed stay as well.  A conviction in the criminal case could render the bankruptcy case moot, as the United States expects most of the assets of the related debtor companies will be forfeited to the United States.  Judicial resources would be used more efficiently by not holding two or more trials when only one (the criminal case) is needed.  In re Ross, 162 B.R. at 862.

4.      A stay is required to prevent injury to the public interest.  The interest of the public in law enforcement exceeds the private interest of pursuing a civil action.  Campbell, 307 F.2d at 487.  The public's interest in law enforcement would be hindered if the defendants in a criminal case were permitted to dissipate the assets and take advantage of the broader evidence rules in a civil case to gain an unfair advantage in the criminal trial.  "The very fact that there is a clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first," and

"substantial weight" should be giving to the priority of the public's interest in law enforcement in making this decision.  Id.  The public also has an interest in judicial economy, which would be served by staying proceedings that may become moot after the criminal trial, rather than continuing with the bankruptcies and using judicial resources unnecessarily.

In sum, by permitting the United States to intervene and granting the United States' request for a stay of the bankruptcy proceedings, the Court will prevent serious interference with the United States' investigation and prosecution of a criminal case, while freezing in place the respective rights of the parties to the bankruptcies.  Given this fact, the Court should permit the United States to intervene and enter an order staying the three related bankruptcy cases until the criminal investigation and trials are completed.

C.    **CONCLUSION**

Accordingly, the United States submits that the requested relief is warranted pending the completion of the criminal prosecution and investigation. It is clear that, after weighing the relevant factors, including the severe prejudice to the United States' criminal prosecution, the public interest in law enforcement and the criminal prosecution, and legitimate concerns of judicial efficiency, this Court should grant a stay of the three related bankruptcy cases.  The potential prejudice to the United States' prosecution far outweighs the minimal cost to the

parties to the bankruptcy of waiting several additional months to pursue their claims against the debtor companies.

Respectfully submitted,

ROBERT E. O'NEILL
United States Attorney

By:    *I. Randall Gold*
Assistant United States Attorney
Deputy Chief, Orlando Division
Florida Bar Number 0268062
501 W. Church Street, Suite 300
Orlando, Florida 32805
Telephone:   407/648-7500
Facsimile: 407/648-7643
E-Mail:    randy.gold@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

All participants in the CM/ECF System

I hereby certify that on August 14, 2008, a true copy of the foregoing, together with any exhibits, has been furnished by mail to the following non-CM/ECF participants:

See attached matrix.

*s/ I. Randall Gold*
I. Randall Gold
Assistant United States Attorney
Deputy Chief, Orlando Division
Florida Bar No. 268062
501 W. Church Street - Suite 300
Orlando, Florida 32805
Telephone:   (407) 648-7500
Facsimile: (407) 648-7643
E-mail: randy.gold@usdoj.gov