UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

AEM, INC.                                Case No. 6:08-bk-04681-KSJ

### UNITED STATES' MOTION TO DISMISS
### INSTANT CASE BASED UPON ITS BAD FAITH FILING[1]

The United States of America, by and through the undersigned Assistant United States Attorney, pursuant to Sections 105(a), 305(a), and 1112 of the Bankruptcy Code,[2] moves this Court to dismiss the instant case based upon its bad faith filing, and in support thereof, states as follows:

### Background

1. On May 28, 2008, debtor AEM, Inc. (AEM) filed for bankruptcy on June 5, 2008. Related debtors Mirabilis Ventures, Inc. (Mirabilis) and Hoth Holdings, LLC. filed for bankruptcy on May 28, 2008.

2. The United States submits that the facts contain herein, as well as the attached affidavits, establish that the instant bankruptcy and the related bankruptcies were filed in bad faith.

3. Attached as Exhibits A and B are affidavits from Jodi Jaiman (the Mirabilis president until Mr. Cuthill took over as president) and Jay Stollenwerk (a member of the board of directors until Mr. Cuthill took over as president)[3] setting forth the basis of the bankruptcy. They have both stated that the sole reason for

---

[1] Identical motions are being filed in two related bankruptcy cases: In re: Hoth Holdings, LLC (Hoth Holdings), Case No. 6:08-bk-04328-KSJ, and In re: AEM, Inc. (AEM), Case No. 6:08-bk-04681-KSJ.

[2] The United States has already sought to intervene in this proceeding through it filed Motion to Intervene and Stay the Instant Case. Dkt. No. 48.

[3] This motion contains copies of the original signed affidavits as attachments. The originals of the affidavits are attached to the motion filed in the Mirabilis case.

the filing of the bankruptcies was to save the litigation so that Amodeo could pay back the IRS for Amodeo's benefit in the grand jury investigation.[4] Additionally, Jaiman states in her affidavit that almost all of the creditors were paid before the bankruptcy was filed. Stollenwerk states in his affidavit that all but two of the creditors were paid before the bankruptcy was filed.

4.  On May 14, 2008, prior to the institution of the instant case, debtors counsel, Scott Shuker and Elizabeth Green met with representatives of the office of the United States Attorney, the Internal Revenue Service (IRS), and the office of the United States Trustee. The facts set forth in paragraph 3 above are corroborated by this meeting. Debtor's counsel explained that they had been hired by Frank L. Amodeo, the controlling person of debtor Mirabilis and the related debtors, and were considering whether to file a Chapter 11 bankruptcy for Mirabilis. They advised that the board of directors at that time, Jodi Jaiman, Shane Williams, and Jay Stollenwerk, would appoint another individual as the sole member of the board of directors and then resign. The new member of the board of directors would then appoint William Cuthill as president of Mirabilis. At that time, debtor's counsel stated that the sole reason for the filing of the bankruptcy in the instant case and related cases was to use the bankruptcy to continue civil litigation which, if settled or won, would provide funds for Frank

---

[4] As previously set forth in the United States' three motions to intervene and stay the bankruptcy cases, on August 6, 2008, Amodeo, the person who controlled debtor Hoth and related debtors Mirabilis and AEM until the filing of the related bankruptcy cases, was indicted for conspiracy, failure to remit payroll taxes, wire fraud, and obstruction of an agency investigation. Case No. 08-cr-176-Orl-28GJK. The Indictment contains forfeiture provisions which seek to forfeit, inter alia, to the United States all assets of debtor Hoth and related debtors Mirabilis and AEM. On September 23, 2008, Amodeo pled guilty to five of the twenty-seven counts of the Indictment and faces up to twenty-five years imprisonment plus fines, restitution, and forfeiture of assets.

Amodeo to pay the Internal Revenue Service some of the $181million he owed the IRS. It was represented that the logic behind paying the IRS with the bankruptcy assets was to allow Amodeo to present this information to the sentencing judge in a potential criminal case against Amodeo, in the hope that he could receive a more lenient sentence. (Exhibit C, McCabe affidavit).[5] The United States advised Shuker and Green against filing the instant related bankruptcy cases.

5. On June 23, 2008, this Court held a status conference in the instant case. At that time, the United States expressed concern over the propriety of the bankruptcy filing based on a perceived improper reason for the bankruptcy filing. (Exhibit D, Tr. pp. 16-17). The United States advised this Court of the reason for the bankruptcy as stated by debtor's counsel at the prior meeting. During the hearing, Ms. Green denied that the stated reason provided the basis of the bankruptcy; rather, she stated to this Court that the "goal of this bankruptcy was to marshal the assets, analyze them, determine what those assets were and distribute them to creditors, whoever those creditors may be." (Exhibit D, Tr. p. 19). She further stated that "I believe the response that Mr. Shuker made was in response to well what will Mr. Amodeo get. And the answer is nothing. Mr. Amodeo isn't related to this bankruptcy. It was allegedly possible that if money went back to the Service that might benefit him, but that was not the reason for the filing." Id. Despite Ms. Green's statements to the contrary, it is clear that this case and the related bankruptcies were filed in bad faith, i.e., for

---

[5] Additionally, Ken Meeker, an Assistant United States Trustee, was present at this meeting and can advise this Court of his recollection of the meeting. This motion contains a copy of the original signed affidavit as an attachments. The original of the affidavit is attached to the motion filed in the Mirabilis case.

the sole purpose of gaining funds to pay back unpaid payroll taxes owed to the IRS in order to gain a perceived advantage in a criminal case.

6. The United States, therefore, requests that this Court dismiss the instant case, as it was filed in bad faith.

### MEMORANDUM OF LAW

Dismissal of a Chapter 11 bankruptcy case is required pursuant to 11 U.S.C. § 1112(b)(1) where the "movant establishes cause" and "unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate" are absent. In re Joyce, Don & Associates, Case No. 2008 WL 343265, *2 (Bankr. M.D. Fla. January 30, 2008) (Judge Briskman). "Cause" includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." Id. (citing 11 U.S.C. § 1112(b)(4)(A)). A court is empowered to sua sponte dismiss a case pursuant to 11 U.S.C. § 305(a) to prevent abuse of the bankruptcy system. Id.

Although "good faith" is required for confirmation of a reorganization plan, 11 U.S.C. § 1129(a)(3), Chapter 11 does not expressly condition the right to file or maintain a proceeding on the "good faith" of the debtor at the time the proceeding is initiated. In re Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1984). Good faith, however, is an implicit requirement for filing for bankruptcy protection. In re Joyce, Don & Associates, 2008 WL 343265, at *2 (citing Phoenix Piccadilly, Ltd. v. Life Ins. Co. of Va. (In re Phoenix Piccadilly, Ltd.), 849 F.2d 1393, 1394 (11th Cir.1988)); Shell Oil Co. v. Waldron (In re Waldron), 785 F.2d 936, 941 (11th Cir.1986). The bankruptcy laws are "intended to give a 'fresh start' to the 'honest but unfortunate debtor.'" In re Joyce, Don &

4

Associates, 2008 WL 343265, at *2 (quoting Marrama v. Citizens Bank of Mass., 127 S.Ct. 1105, 1116 (2007)). A petition filed in bad faith is subject to dismissal. In re Joyce, Don & Associates, 2008 WL 343265, at *2 (citing State Street Houses, Inc. v. N.Y. State Urban Dev. Corp. (In re State Street Houses, Inc.), 356 F.3d 1345, 1347 (11th Cir. 2004)); The Bal Harbour Club, Inc. v. AVA Dev., Inc. (In re Bal Harbour Club, Inc.), 316 F.3d 1192, 1195 (11th Cir. 2003); In re Phoenix Piccadilly, Ltd., 849 F.2d at 1395.

Section 1112(b) of the Code permits a bankruptcy court to convert or dismiss a case for "cause". The determination of cause under § 1112(b) is "subject to judicial discretion under the circumstances of each case." In re Albany Partners, Ltd., 749 F.2d at 674 (quoting In the Matter of Nancant, 8 B.R. 1005, 1006 (Bankr. D.Mass. 1981)). "The equitable nature of this determination supports the construction that a debtor's lack of 'good faith' may constitute cause for dismissal of a petition." Id. "In finding a lack of good faith, courts have emphasized an intent to abuse the judicial process and the purposes of the reorganization provisions." Albany Partners, 749 F.2d at 674. "Particularly when there is no realistic possibility of an effective reorganization, dismissal of the petition for lack of good faith is appropriate." Id. (citing In re Eden Associates, 13 B.R. 578, 583-85 (Bankr. S.D.N.Y. 1981)); In re Victory Construction Co., Inc., 9 B.R. 549, 555-56, 558, 564-65 (Bankr. C.D.Cal. 1981); In re G-2 Realty Trust, 6 B.R. 549, 552-54 (Bankr. D.Mass. 1980); In re Dutch Flat Investment Co., 6 B.R. 470, 471-72 (Bankr. N.D.Cal. 1980); In the Matter of Levinsky, 23 B.R. 210, 219-220 (Bankr. E.D.N.Y. 1982); In the Matter of Northwest Recreational Activities, Inc., 4 B.R. 36, 38-40 (Bankr. N.D.Ga. 1980).

"The provision lists nine examples of cause, but the list is not exhaustive." Albany Partners, 749 F.2d at 674. "The pertinent legislative history states that '[t]he court will be able to consider other factors as they arise, and use its equitable powers to reach an appropriate result in individual cases.'" Id. (citing H.R.Rep. No. 595, 95 Cong., 1st Sess. 406 (1977), U.S.C.C.A.N. 1978, pp. 5787, 6362). The circumstantial factors evidencing bad faith include:

i. The debtor has only one asset in which it does not hold legal title;

ii. The debtor has few unsecured creditors who claims are small in relation to the claims of the secured creditors;

iii. The debtor has few employees;

iv. The property is the subject of a foreclosure action as a result of arrearages on the debt;

v. The debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in a state court action; and

vi. The timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

In re Joyce, Don & Associates, 2008 WL 343265, at *2 (citing In re Phoenix Picadilly, Ltd., 849 F.2d at 1394-95). This list of factors is "non-exhaustive and not to be rigidly applied...." Id. (citing In re State Street Houses, Inc., 356 F.3d at 1347).

In In re Joyce, Don & Associates, Judge Briskman analyzed the nine factors and concluded that the case was filed in bad faith. In so concluding, Judge Briskman found that the debtor filed for bankruptcy protection immediately

before a foreclosure sale was to take place; the debtor's only creditors of consequence were the secured creditors who held liens on four parcels of real property; there were no unsecured creditors or employees; the debtor had no personal assets; the debtor had no income; there was no reasonable likelihood of the debtor's rehabilitation; and there was a continuing diminution of the estate. Id.

The United States submits that the instant case is similar to in may respects to In re Joyce, Don & Associates and that the following factors establish the bad faith filing:

1. The debtor has no employees other than Mr. Cuthill;

2. There is no intent to reorganize and conduct business;

3. The debtor has virtually no assets other than litigation and all of the assets are subject to criminal forfeiture;

4. The timing of the filing of the instant case was in part a result of a breach of contract action in another jurisdiction relating to property owned by Hoth Holdings, a subsidiary of the debtor

5. There is substantial evidence that the sole reason for the filing of the bankruptcy in the instant case and related cases was to use the bankruptcy to continue civil litigation which, if settled or won, would provide funds for Frank Amodeo to pay the Internal Revenue Service some of the $181 million he owed the IRS. The logic behind paying the IRS with the bankruptcy assets was to allow Amodeo to present this information to the sentencing judge in a potential criminal case against Amodeo, with the hope that he could receive a more lenient sentence;

6.   The assets of the debtor will be used primarily to pay the hourly fees of the "president" and debtor's counsel; and

7.   The estate is subject to substantial and continuing diminution. Most of the creditors were paid prior to the institution of the bankruptcy proceedings. Most of the major creditors remaining in this case are companies controlled by Amodeo and appear to be an effort by him to regain the stolen payroll tax money.

Additionally, Amodeo, the individual who controlled the debtor until this case was filed has been indicted and has pled guilty to five of the charges in the Indictment. Bankruptcy should not be "a haven for wrongdoers." See In re: McMullen, 386 F.3d 320, 325 (1st Cir. 2004); In re Davis, 194 F.3d 570, 573-74 (5th Cir. 1999); In re Universal Life Church, Inc., 128 F.3d 1294, 1297 (9th Cir. 1997); In re Bilzerian,146 B.R. 871, 873 (Bankr. M.D. Fla.).

Moreover, these bankruptcies were filed after the debtor had notice of the civil forfeiture case and after the government had seized most of the non-litigation assets. The filing of a bankruptcy petition causes an automatic stay to go into effect preventing creditors from commencing or continuing legal proceedings in connection with their pre-petition claims against the debtor or property of the estate. 11 U.S.C. § 362(a). Section 362(b) of contains a list of actions exempted from the automatic stay, including an exemption for governmental units or organizations to exercise their police and regulatory powers. 11 U.S.C. § 362(b)(4);[6] see also Chao v. Hospital Staffing Services, Inc.,

---

[6] The theory of this exemption is because bankruptcy should not be "a haven for wrongdoers," the automatic stay should not prevent governmental regulatory, police and criminal actions from proceeding. 3 Collier on Bankruptcy ¶ 362.05 [5][a], at 362-54 (15th ed.1996). See also, In re: McMullen, 386 F.3d at 325; In re Davis, 194 F.3d at 573-74; In re Universal Life Church, Inc., 128 F.3d at 1297; In re

270 F.3d 374, 386 *(Paragraph 4 [of Section 362(b)] excepts commencement or continuation of actions and proceedings by governmental units to enforce police of regulatory powers).* The United States takes the position that, pursuant to section 362(b)(4), the automatic stay neither bars the commencement of a its criminal forfeiture case not the continuation of its civil forfeiture action filed before the bankruptcy was commenced, United States v. Real Property located at 614 Lake Avenue, et al., Case No. 6:08-cv-670-Orl-22KRS, because both are an exercise of the federal government's police power.

Specifically, section 362(b)(4) provides, in relevant part, that the filing of a bankruptcy petition does not operate as a stay:

> under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's ... police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's ... police or regulatory power.

11 U.S.C. § 362(b)(4).[7]

The United States submits that it has established cause for dismissal exists pursuant to 11 U.S.C. § 1112(b). Dismissal is in the best interests of the creditors and the estate. The filing is an abuse of the judicial system and the purposes of Chapter 11. The United States submits that this case should be dismissed pursuant to 11 U.S.C. §§ 1112(b), 105(a), and 305(a)(1).

---

Bilzerian, 146 B.R. at 873.

[7] "In 1998, § 362(b)(4) was amended by combining §§ 362(b)(4) and (5) and expanding the scope of the exception to cover proceedings 'to obtain possession of property of the estate . . . or to exercise control over property of the estate.'" In re Chapman, 264 B.R. 565, 570 (9th Cir. BAP 2001) (citations omitted).

C.  **CONCLUSION**

Accordingly, the United States submits that this Court should dismiss the instant case.

>Respectfully submitted,
>
>ROBERT E. O'NEILL
>United States Attorney
>
>By:  **s/ I. Randall Gold**
>Assistant United States Attorney
>Deputy Chief, Orlando Division
>Florida Bar Number 0268062
>501 W. Church Street, Suite 300
>Orlando, Florida 32805
>Telephone:  407/648-7500
>Facsimile: 407/648-7643
>E-Mail:    randy.gold@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 24, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

All participants in the CM/ECF System

I hereby certify that on September 24, 2008, a true copy of the foregoing, together with any exhibits, has been furnished by mail to the following non-CM/ECF participants:

See attached matrix.

*s/ I. Randall Gold*
I. Randall Gold
Assistant United States Attorney
Deputy Chief, Orlando Division
Florida Bar No. 268062
501 W. Church Street - Suite 300
Orlando, Florida 32805
Telephone:  (407) 648-7500
Facsimile: (407) 648-7643
E-mail: randy.gold@usdoj.gov