UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:

AEM, Inc.,                           Case No. 6:08-bk-04681-KSJ
                                     Chapter 11

    Debtor.

_____/

## UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT

This case involves a dispute over employment taxes that AEM reported and paid for the first and second quarters of 2007. For those two quarters AEM filed a consolidated employment tax return (Form 941) that reported and paid the combined employment taxes of four companies: itself (TIN xx-xxx7877); Presidion Solutions VI, Inc., a/k/a Paradyme, Inc. (TIN xx-xxx0991); Presidion Solutions VII, Inc., a/k/a Professional Benefit Solutions (TIN xx-xxx1757); and National MedStaff, Inc. (TIN xx-xxx4058).

In this bankruptcy, the IRS filed a proof of claim for $3,195,661.83, which represents the unpaid balance of the employment taxes, as computed based on the returns that AEM filed, for the second quarter. The tax for the first quarter has been satisfied. AEM objects to the IRS' claim, and it seeks a refund of approximately $25 million from the United States, representing the employment taxes attributable to the other three companies.

Numerous legal grounds bar AEM's refund claim. First, the doctrine of voluntary payment prohibits AEM from obtaining a refund of taxes it paid on behalf of another. For this doctrine it is irrelevant whether AEM was permitted to file a consolidated return under the Internal Revenue Code, and it is irrelevant whether the other companies' taxes were assessed against them individually or as part of a single assessment against AEM.

Second, the arguments and positions that AEM took in its criminal case judicially estop it from seeking a refund from the United States.  In order to obtain permission to plead nolo contendere in its criminal case, AEM told Judge Antoon that its only significant assets were professional malpractice claims and that successful prosecution of those claims, which would be undercut by the admissions connected with a guilty plea, might lead to additional restitution for the United States and its taxpayers.  AEM deliberately concealed from Judge Antoon that it was pursuing a $25 million refund claim against the United States, which would significantly increase the losses the United States suffers as a result of Frank Amodeo and AEM's criminal conduct. AEM is judicially estopped from now asserting a claim it concealed in its criminal case.

Third, the legal doctrine of variance bars AEM from seeking a refund on any basis that is not set forth in its refund request.  AEM's amended tax returns, which constitute its refund request, set forth only a single unsustainable ground – that the taxes of the other three companies were "inadvertently" included in its original return.  Assuming for summary judgment that the inclusion was inadvertent, the voluntary payment doctrine bars any refund, but even if it did not, AEM has not cited a single legal basis that an inadvertent inclusion would entitle it to a refund.

AEM raises two additional arguments in this case that, even if they are not barred by the variance doctrine, are so devoid of any legal or factual support as to entitled the United States to summary judgment.  AEM claims that it is entitled to a refund because AEM did not comply with provisions in the tax code dealing with consolidated tax returns, and AEM claims that it is entitled to a refund because the four companies were not commonly owned and therefore could not file a consolidated tax return.  After extensive discovery AEM has still not named a single tax code provision that it allegedly violated or any facts to support its refund claim, such as showing

4839385.1

that the companies were not commonly owned.  Summary judgment is specifically designed to

prevent these unsupported and conclusory allegations from proceeding to trial.

Finally, even if AEM were to show that it violated some statute or regulation regarding

the filing of consolidated tax returns, AEM is still not entitled to a refund.  This is because the

money that was used to pay the taxes attributable to the other three companies was not AEM's

money – it belonged to the other three companies.  As AEM admits, all four companies used a

common bank account.  The funds that each company deposited into the account were used to

pay its expenses, including payroll and employment taxes.  Under Florida law the money did not

become AEM's simply because it was deposited into an account that AEM owned.  Rather, each

company maintained ownership of the funds that it deposited in that account.

Therefore, the Court should grant partial summary judgment to the United States and

deny AEM's request for a refund.

I.    **FACTS**

A.    **Frank Amodeo's Employment Tax Fraud Scheme**

On September 22, 2008, Frank Amodeo pled guilty to one of the largest employment tax

fraud schemes in this country's history.[1]  (Exhibit A, Amended Plea Agreement; Ex. B.

Judgment); United States v. Frank L. Amodeo,  Case No. 6:08-cr-00176-JA-GJK (M.D. Fla.),

Docket Entry 38.  Amodeo pled guilty to conspiracy, failure to collect and remit payroll taxes,

and obstruction of an agency proceeding.  (Ex. A, pg. 1.)

---

[1]Fed. R. Evid. 803(22) provides that evidence of a final judgment, entered after a trial or
upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a
crime punishable by death or imprisonment in excess of one year, is not excluded by the hearsay
rule and may be used to prove any fact essential to sustain the judgment.

4839385.1

Amodeo carried out his crimes using a web of professional employee organizations. (Ex. A, pg. 26.)  Amodeo directly controlled a number of those companies, including the Sunshine Companies, Professional Benefit Solutions ("PBS"), Paradyme, Inc., and Presidion Solutions.  (Ex. A, pg. 26.)  Amodeo also had varying degrees of control over other companies involved in his conspiracy, including Mirabilis Ventures, Inc. (hereafter "Mirabilis").  (Ex. A, pg. 27.)  Although Amodeo was never an officer, director or employee of Mirabilis, he created Mirabilis, brought in the officers to run the company and funded the company with directed payroll tax funds that should have been paid over to the Internal Revenue Service.  (Ex. A, pg. 32.)

AEM is a wholly owned subsidiary of Mirabilis Ventures.  [D.E. 120, pg. 6].  Amodeo exercised control over AEM's bank accounts as part of this conspiracy, including directing the transfer of funds through an account owned by AEM.  (Ex. A, pg. 34.)  As part of his plea, Amodeo agree to forfeit certain assets, including the assets of AEM.  (Ex. A, pg. 13.)  This is because AEM and its corporate assets were purchased or funded with proceeds from Amodeo's scheme.  (Ex. A., pg. 17.)  The United States subsequently entered into a settlement that transferred some assets back to the companies.  In re: Mirabilis Ventures, Inc., Case No. 6:08-bk-04327 (Bankr. M.D. Fla.), Docket Entry 145.

### B.    AEM's Nolo Contendere Plea

For its part in this scheme, AEM pleaded nolo contendere to a variety of charges.  (Ex. B, AEM plea agreement); United States v. AEM, Inc. d/b/a Mirabilis HR, Case No. 6:08-cr-00231-JA-KRS (M.D. Fla.), Docket Entry 157.  At the time that AEM was indicted, R.W. Cuthill, Jr. had been appointed as its president.  AEM specifically requested permission to plead nolo

4839385.1

contendere.  <u>United States v. AEM, Inc., et al.</u>, 6:08-cr-00231-JA-KRS, Docket Entry 139.

To support its motion to enter a nolo contendere plea, AEM stated that Mr. Cuthill "has

no personal knowledge of the any of the facts alleged by the Government in the indictment and

is, therefore, unable to certify from personal knowledge any of the facts necessary to support a

guilty plea."  <u>Id</u>. at 2.  This theme was repeated consistently throughout AEM's motion.  <u>Id</u>. at 9

("Mr. Cuthill has no personal knowledge of the facts alleged in the indictment"); <u>Id</u>. at 13 ("As

the Government acknowledged, Mr. Cuthill has no personal knowledge of the facts set forth in

the indictment.  Thus, Mr. Cuthill cannot honestly, explicitly and generally admit to facts alleged

in the indictment since he lacks personal knowledge of those very facts.")

AEM also sought to plead nolo condendere so that it could continue to pursue civil

malpractice claims.  <u>Id</u>. at 9 ("A *nolo condendere* plea, however, ensures that the Defendants, as

a plaintiff for the liquidating debtor's estate, will be able to pursue its civil claims and have them

resolved on their merits.  The majority of the remaining assets in the Defendant-Debtors

bankruptcy estates are in the form of professional malpractice claims, which a guilty plea would

significantly hamper.")  AEM wanted to avoid any estoppel issues that would arise as a result of

its guilty plea.  <u>Id</u>. at 12.

AEM went on to describe that the government, and ultimately the U.S. taxpayers, would

benefit if it were allowed to plead nolo contendere and pursue its civil malpractice claims.  <u>Id</u>. at

10.  Pursuing these claims "further serves the public interest since the taxpayers are the real

majority creditors in the case."  <u>Id</u>. at 10.  If AEM were not allowed to plead nolo contendere,

"Mr. Cuthill's ability to successfully pursue civil litigation on behalf of the Defendants will be

greatly reduced, minimizing any hope that the taxpayers will receive restitution from the very

4839385.1

professionals who advised and helped the Defendants execute this fiasco." Id. at 12.

AEM filed this motion on May 21, 2010, after it had prepared the amended Forms 941-X that are at issue in this bankruptcy case and through which it seeks a refund of over $25 million from the United States.  At no point in its motion in the criminal case did AEM ever disclose to Judge Antoon that it had filed amended employment tax returns for the first and second quarters of 2007 in which it sought a refund of approximately $25 million from the United States and that it was pursuing such a claim in the bankruptcy case.

Judge Antoon considered AEM's motion and relied on its assertions in allowing AEM to plead nolo contendere.  United States v. AEM, Inc., et al., 6:08-cr-00231-JA-KRS, Docket Entry 149.  In his decision, Judge Antoon found that Mr. Cuthill's assertion that he does not have knowledge of the facts to support a guilty plea is "plausible" and weighs in favor of allowing AEM to plead nolo contendere.  Id. at 5.  He went on to describe that "the Receiver believes that pleas of guilty would result in his being legally estopped from pursing civil actions for professional malpractice on behalf of the Corporate Defendants," that "[t]he only potential beneficiaries of the civil action are the innocent creditors of the Corporate Defendants, including the Government, and that "[t]he Corporate Defendants' only assets are potential causes of action for malpractice against professionals who might have breached their duty to the Corporate Defendants."  Id. at 6.

### C.     AEM's 2007 Employment Tax Returns

In June 2007, AEM filed quarterly tax returns for the first and second quarters of 2007. (Ex. C, AEM's 1Q and 2Q 2007 941s.)  Those returns were signed by Frank Amodeo as the "liquidating agent" of AEM.  These two Forms 941 were consolidated employment tax returns

- 6 -

that included the combined liabilities of AEM, Paradyme, PBS and National MedStaff.

The IRS made tax assessments against AEM based on the two returns that it filed. (Ex. D, IRS Certificate of Assessments, Payments, and Other Specified Matters for AEM.)  As reflected in the IRS' records, the other three companies did not file tax returns for the first or second quarter of 2007.  (Ex. E, IRS Certificate of Assessments, Payments, and Other Specified Matters for Paradyme, PBS and National MedStaff.)

During this time, all four companies used a common bank account that was owned by AEM, as AEM admitted in its response to the United States' contention interrogatory:

> **INTERROGATORY NO. 1**:  State the legal and factual basis for AEM, Inc.'s contention that it erroneously or inadvertently filed its original Form 941 tax returns for the first and second quarters of 2007 based on four companies: itself (Taxpayer Identification Number xx-xxx7877); Presidion Solutions VI, Inc. a/k/a Paradyme, Inc. (TIN xx-xxx0991); Presidion Solutions VII, Inc. a/k/a Professional Benefit Solutions (TIN xx-xxxx1757); and National MedStaff, Inc. (TIN xx-xxx4058.
>
> **ANSWER NO. 1:**
>
> In response to Interrogatory No. 1, AEM states:
>
> **Prior to 2007, all four of the aforementioned companies filed separate returns.  In 2006 and 2007, all four companies deposited their total payrolls into a bank account, maintained at Bank of America, in the name of AEM d/b/a Mirabilis HR.  The subject companies did not comply with provisions in the tax code for filing consolidated 941 returns.  Furthermore, and pursuant to Rule 7033(d), *Federal Rules of Civil Procedure*, additional information that supports AEM's factual basis in responses to Interrogatory Number 1 has been served on the USA in conjunction with AEM's responses to the USA's first request to produce, and is served on a CD titled "AEM Docs for USA" and CD titled "AEM BOX STMTS 07".**

(Ex. F, AEM responses to the United States' first set of interrogatories)

AEM's current president, R.W. Cuthill, Jr., explained during his deposition that all four

4839385.1

companies shared a common bank account:

> Q:      Now, you also – it also states all tax deposits were drawn out of AEM,
> Inc.'s bank account.  And my understanding of what your interrogatory
> responses were, was that, in fact, all of the funds from all four of these
> PEO's – H.R. One, H.R. Two, H.R. Three, H.R. Four – were deposited
> into an AEM bank account and then federal tax deposits were paid out of
> an AEM bank account for these two quarters of 2007?

> A:      **Correct**.

(Ex. G, pg. 117)

### D.      The IRS' Proof of Claim

AEM filed for bankruptcy on June 5, 2008.  [D.E. 1.]  The IRS filed a proof of claim that

had a priority portion of $2,492,059.53 and a general unsecured portion of $703,602.30, both for

unpaid FICA taxes for the tax period ending 6/30/2007.  [IRS Claim No. 4.]

On October 9, 2009, AEM objected to the IRS' claim.  [D.E. 162.]  AEM alleges that it

improperly paid withholding taxes for AEM, Presidion Solutions VI, Inc., Presidion Solutions,

VII, Inc. and National MedStaff, Inc. when it should have only paid withholding taxes for AEM.

[D.E. 162.]  AEM's objection does not elaborate as to why it was allegedly improper to file a

consolidated return for these four companies.  [D.E. 162.]  AEM's objection includes a

spreadsheet that separately states the employment taxes attributable to each of the four

companies.  [D.E. 162.]

In its objection AEM requested that the Court disallow the IRS' claim, but it did not

specifically request that it receive a refund of the allegedly overpaid employment taxes.  [D.E.

162.]  In the interest of judicial economy, the United States requested that the Court consider

both issues in this proceeding rather than determining the objection to claim in this case and then

requiring the debtor to bring a separate case in district court regarding the refund.  The Court

agreed to consider both the objection to claim and the refund in this proceeding.

In December 2009, AEM filed amended Forms 941 for the first and second quarter of

2007 seeking to restate its employment tax liabilities for those two quarters.  (Ex. C, AEM Forms

941-X.)  The Forms 941-X would remove the employment tax liabilities for Presidion VI, Inc.,

Presidion VII, Inc., and National MedStaff, Inc.  In these amended returns, AEM states that it

"inadvertently included the above wages and income and payroll tax liabilities of the following

entities: Presidion VI, Inc., Presidion VII, Inc., and National MedStaff, Inc."  (Ex. C.)  It did not

state that its original return was unauthorized or improper.  AEM also states that "all tax deposits

were drawn out of AEM, Inc.'s bank account."  (Ex. C.)

On August 6, 2010, the IRS filed an amended proof of claim.  [IRS Amended Claim 4.]

The amended proof of claim asserts a right to setoff of $1,122,848.29.  Id.  It includes a secured

portion of $1,122,848.29 and a priority portion of $2,072,813.54.  Id.  The total amount of the

claim remained the same.

### E.    During Discovery AEM Failed to Articulate any Basis that Would Entitle It to a Refund of the Employment Taxes It Paid in 2007

The United States has taken discovery in this case to determine the basis upon which

AEM objects to the IRS' claim and upon which it seeks a refund the approximately $25 million

in employment taxes.  Despite the United States' attempts, AEM has failed to articulate any legal

and factual basis under which it would be entitled to a refund.

### 1.    AEM Failed to Articulate Any Basis for a Refund in its Response to the United States' Contention Interrogatory

The United States served a contention interrogatory asking AEM to set forth the legal and

- 9 -

factual basis for its claim.  That interrogatory was set forth in full in Section I.,C., *infra*.  AEM's

response was that "**The subject companies did not comply with provisions in the tax code for**

**filing consolidated 941 returns....**"  (Ex. F).  Thus, the only basis that AEM raised in response

to the United States' discovery was that the consolidated employment tax returns did not comply

with provisions of the tax code for filing consolidated 941 returns.  After more than a year of

discovery, AEM has still failed to identify a single provision of the tax code that it allegedly

violated.  AEM has also not provided any factual support for this allegation.

> **2.     AEM's President R.W. Cuthill, Jr., Described Only a Single Basis For**
> **AEM's Refund Claim at His Deposition – That the Companies Did**
> **Not Have a Common Owner**

The United States deposed Mr. Cuthill to determine what legal and factual basis, if any,

AEM might have for objecting to the IRS' claim and requesting a refund.  At his deposition,

Mr. Cuthill provided scant elaboration at best:

> Q.     .... Explain to me, sort of in broad terms, what your objection is.  What is
> the basis of this objection?
>
> A.     **.... I objected to the claim on the basis that AEM did not own H.R.**
> **one, two, three, and four.  It only owned H.R. three and should have**
> **filed 941's on the basis of its ownership of H.R. three, which it had**
> **done in all of the prior quarters to 2007.**

(Ex. G, Cuthill deposition excerpts, pg. 89.)  Later on, Mr. Cuthill reiterates the same basis:

> Q:     So, if Presidion VI were to have filed one, at least according to the records
> prepared by Mr. Ramos, it would look like this first column on exhibit –
> on the exhibit to your objection to claim – our exhibit six?
>
> A:     **Correct**.
>
> Q.     Okay.
>
> A:     **And that was the basis of my objection, in that the four companies**

>**had filed separate 941's in all the prior quarters, and it – I didn't understand why they filed this composite 941 in this quarter – and consulted with my CPA firm, KPMG, to help me understand why they did. I met with Amodeo to – since he signed the two returns in question – to understand why he did it. And I still don't know.**

(Ex. G, pg. 96.)

The basis that Mr. Cuthill described in his deposition is different than the basis that AEM stated in its amended tax return, which is that the employment tax liabilities of the other three companies were "inadvertently" included on its original consolidated return. When asked to explain what "inadvertently" meant, Mr. Cuthill had no response:

Q:    Now, what do you mean by inadvertently?

A:    **You have to ask Mr. Bocox. That's his terminology**.

Q:    But, you signed this. So. What is your understanding of what it means?

A:    **They should not have put it in.**

Q:    Because why?

A:    **They could have said "incorrectly." I asked Mr. Bocox if they should have filed this. I asked the positive question of whether they should have filed this and —**

Q:    Should have filed —

A:    **With four companies**.

Q:    Okay.

A:    **And he told me that they actually are not allowed to.**

Q:    And so –

A:    **So, inadvertently is probably a nice way of saying they did it wrong**.

(Ex. G, pgs. 116-117.)[2]

## II.    ARGUMENT

### A.    Summary Judgment Standard

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any 'show that there is no genuine issue as to any material facts and that the movant is entitled to a judgment as a matter of law.'" Burgos v Chertoff, 274 Fed. Appx. 839, 841 (unpublished) (11th Cir. 2008) (citing to Fed. R. Civ. Pro. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)); see also Brooks v. County Commission of Jefferson County, Alabama, 446 F.3d 1160, 1162 (11th Cir. 2006).

A party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment to show there is a genuine issue for trial." Tidmore v. BP Oil Co./Gulf Prods. Div., 932 F.2d 1384, 1387 (11th Cir. 1991) (internal citations omitted). "Summary Judgment is required where the non-moving party's response to a motion is merely a repetition of his conclusional allegations and is unsupported by evidence showing an issue for trial." Comer v. City of Palm Bay, Florida, 265 F.3d 1186, 1992 (11th Cir. 2001) (internal citations omitted);

---

[2]Mr. Bocox is the accountant at KPMG who prepared the amended tax returns for AEM. Mr. Bocox actually stated that if AEM had not filed a particular tax form or did not have a legal contract signed between the companies, then it "**should** probably file by themselves, because they're not legally obligated to file." (Ex. H, pg. 14) (emphasis added). He did not say that AEM **could not have** filed a consolidated return with the other three companies.

In any event, Mr. Bocox makes clear in his testimony that his opinions on whether or not AEM was required to file a consolidated return are actually just the advice that he got from Mr. Friedman, someone in KPMG's national office. Thus, all of Mr. Bocox's testimony on whether AEM should have filed a consolidated tax return is inadmissible hearsay, because it is actually the statements of Mr. Friedman, a person AEM did not list in its responses to the United States' discovery and presumably will not be calling at trial. See Fed. R. Evid. 801, 802. Thus, AEM cannot rely on the opinion of Mr. Bocox at trial nor in opposing summary judgment.

4839385.1

see also  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2nd Cir. 1986) (a party cannot "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment").  "The United States Supreme Court has noted that a party will not survive a motion for summary judgment simply on the 'basis of the allegations of their Complaint, coupled with the hope that something can be developed at trial in the way of evidence to support those allegations.'"  Huggins v. Teamsters Local 312, 585 F. Supp. 148, 150 (E.D. Pa. 1984) (citing First National Bank of Arizona v. Citizens Service Co., 391 U.S. 253, 290 (1968)).

"'For issues ... on which the non-movant would bear the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar material negating the opponent's claim ....  Instead, the moving party may show ... that there is a an absence of evidence to support the non-moving party's case.'"  Goolsby v. Gain Technologies, 362 Fed. Appx. 123, 132 n. 13 (11th Cir. 2010) (UNPUBLISHED) (quoting Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-16 (11th Cir. 1993)).  "Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, depositions, answer to interrogatories and admissions on file."  Comer, 265 F.3d at 1192 (internal quotations omitted).

B.    **If AEM Were Permitted to Maintain a Refund Claim, AEM Would Bear the Burden of Proving That It Is Entitled to a Refund**

An assessment of federal income tax by the Internal Revenue Service is presumed valid.  Welch v. Helvering, 290 U.S. 111, 115 (1933); Bone v. Comm'r, 324 F.3d 1289, 1293 (11th Cir. 2003); United States v. Ryals, 2005 WL 3338720, *6, 96 A.F.T.R.2d 2005-7344 (N.D. Fla.

Dec. 8, 2005).  A taxpayer challenging the assessment bears the burden of overcoming the

presumption of correctness and must prove by a preponderance of the evidence that the

Commissioner's determinations were incorrect.  Bone, 324 F.3d at 1293; see also Olster v.

Comm'r, 751 F.2d 1168, 1174 (11th Cir. 1985) ("[a]bsent a finding that the computational

methods used, and therefore the assessment, was arbitrary and without foundation, the tax

deficiency is presumptively correct"); Ryals, 2005 WL 3338720, *6 ("taxpayer has the burden of

proving that the assessment was incorrect as well as the correct amount that the assessment

should have been").

The burden of proof does not change in a bankruptcy case.  "In most instances the burden

to prove entitlement to a claim lies with the creditor.  That general proposition, however, is not

true for most tax claims.  As a general rule, the burden of proof is on the taxpayer in tax refund

cases."  In re: Industrial Commercial Electrical, Inc., 304 B.R. 24, 29 (D. Mass. 2004); In re:

PT-1 Communications, Inc., 2011 Bankr. LEXIS 689, at *14 (E.D.N.Y. March 3, 2011) (placing

burden on taxpayer in seeking tax refund); In re: Steffen, 349 B.R. 734, 741 (M.D. Fla. 2006).[3]

The United States' claim is based on the Forms 941 that AEM filed, and it is verified by

Certificates of Assessments and Payments that show the assessments made against AEM and the

amounts that remain unpaid.  Certificates of Assessments and Payments are legally sufficient to

establish that an assessment has been made and the amount.  See e.g., United States v. Chila, 871

F.2d 1015, 1017-18 (11th Cir. 1989).  Thus, the United States has met any burden it might have

---

[3]Some burden of proof cases discuss 26 U.S.C. § 7491, which in certain instances may
shift the burden from the taxpayer to the government.  However, the language of this statute
limits its application to taxes under subtitle A or B.  Employment taxes are imposed by subtitle
C, so § 7491 is inapplicable in this case.

- 14 -

of proving its claim against AEM.

If AEM seeks to amend the tax returns that it originally filed and obtain a refund of the employment taxes that it has already paid, then it bears the burden of proving that it is entitled to a refund.

### C.   AEM Cannot Seek a Refund of Taxes It Voluntarily Paid on Behalf of the Other Three Companies

"It has long been settled that 'in order to maintain an action for the refund of taxes under the Internal Revenue Code, the plaintiff must be the taxpayer who has overpaid his own taxes.'" Barris v. United States, 1997 U.S. Dist. LEXIS 7179, at *25-26 (W.D. Pa. April 30, 1997) (citing Collins v. United States, 209 Ct. Cl. 413, 532 F.2d 1344, 1347-48 (Ct.Cl. 1972));  see also Wourdack v. Becker, 55 F.2d 840 (8th Cir. 1932).  "In cases involving the voluntariness of plaintiff's payment of tax liabilities of a third party, it is fundamental that plaintiff cannot recover if the payment in issue was voluntary and plaintiff bears the burden of proving some element which would remove him from the category of volunteer."  Collins, 209 Ct. Cl. at 1348; see also Stahman v. Vidal, 305 U.S. 61, 64 (1938) (stating that if petitioners voluntarily paid someone else's tax, they could not maintain a refund action).

The facts of Combined Industries, Inc. v. United States, are analogous to this case.  83 Ct. Cl. 613 (1936).  Consolidated Industries filed a consolidated tax return for itself and Parker Sheet Metal Works.  Id. at 614.  Consolidated Industries had a loss and Parker Sheet Metal Works had a gain, and the net result was a tax due, which Consolidated Industries paid.  Id. at 614-615. Thereafter, the Commissioner of Internal Revenue determined that the two companies were not eligible to file consolidated returns.  Id. at 615.  Consolidated Industries sued to obtain a refund

- 15 -

of the taxes it overpaid as a result of filing a consolidated return with Parker Sheet Metal Works. Id. at 614.

The Court of Claims found that Consolidated Industries could not obtain a refund.  "The tax paid by plaintiff, and more, was due from the Parker Sheet Metal Works and plaintiff knew when he paid the amount sought to be recovered that it was paying the tax of the Parker Sheet Metal Works.  In these circumstances it must be held that plaintiff assumed such tax."  Id. at 617. That the tax was assessed against Consolidated Industries rather than against Parker Sheet Metal Works did not entitle Consolidated Industries to a refund, nor did it transform its payment into a payment of its own taxes rather than Parker Sheet Metal Works' taxes.  Id. at 617 ("...the fact that the amount thereof was assessed in the name of plaintiff is not controlling.  The manner in which the tax was assessed does not alone justify a refund.")

 AEM filed consolidated employment tax returns.  Assessments were made against AEM rather than the other three companies.  AEM now seeks to undo its "inadvertent" inclusion of the other three companies in its original consolidated tax return.  Consolidated Industries bars any refund to AEM under these circumstances.[1]

**D.      AEM is Judicially Estopped From Pursuing Any Claims Against and Seeking Any Refund From the United States**

"The purpose of judicial estoppel is to protect the integrity of the judicial process by prohibiting parties from changing positions according to the exigencies of the moment." Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1273 (11th Cir. 2010) (internal citations omitted). It is designed to prevent a party from asserting a claim in a legal proceeding that is inconsistent

---

[1]Pursuant to Consolidated Industries, it is also immaterial for summary judgment whether AEM was entitled to file a consolidated return.

with a claim taken by the party in a prior proceeding.  Id.  The Supreme Court has described that

three factors typically inform a court's decision to invoke judicial estoppel: 1) whether the

present position is clearly inconsistent with the earlier position, 2) whether the party succeeded in

persuading a court to accept the earlier position, so that judicial acceptance of the inconsistent

position in later proceeding would create the perception that either the first or second court was

misled and 3) whether the party advancing the inconsistent position would derive an unfair

advantage.  Id. at 1273 (citing to New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001)).

Under the guidance of these three factors, the Eleventh Circuit has designed a two-part

test for establishing the bar of judicial estoppel.  Id.  First, it must be shown that the allegedly

inconsistent positions were made under oath in a prior proceeding.  Id.  Pleadings are equivalent

to sworn statements for the purposes of judicial estoppel.  In re: Gosman, 382 B.R. 826, 842

(S.D. Fla. 2007).  Second, such inconsistencies must be shown to have been calculated to make a

mockery of the judicial system.  Robinson, 595 F.3d at 1273.

AEM is judicially estopped from bringing its refund claim against the United States.[2]

The Eleventh Circuit's two-part test is easily met.  After filing its refund claim, in its criminal

case AEM repeatedly stated that it needed to plea nolo contendere in order to pursue professional

malpractice claims so that it could recover money and pay restitution to its largest creditor – the

United States – and ultimately to the U.S. taxpayers.  At no point did AEM tell Judge Antoon

that it also was pursuing a $25 million refund claim against the United States in this bankruptcy

---

[2]Judicial estoppel would also bar Mr. Cuthill, who disclaimed all first-hand knowledge of
AEM from the 2005-2007 time period in its criminal case, from testifying about any facts from
that time period in this case.  For Mr. Cuthill's repeated disclaimers of first-hand knowledge in
this case, see Ex. I, USA's RFAs and Ex. J, AEM's responses to USA's RFAs.

4839385.1

case.  AEM deliberately led him to believe that its professional malpractice claims were the only

claims it possessed, and based on AEM's representations that is exactly what Judge Antoon

described in his opinion – "[t]he Corporate Defendants' only assets are potential causes of action

for malpractice against professionals who might have breached their duty to the Corporate

Defendants."  AEM cannot now bring a claim it previously led Judge Antoon to believe it did not

have.  This is completely inconsistent.

AEM's actions also make a mockery of the judicial process.  AEM led Judge Antoon to

allow AEM to plea nolo contendere and believe his decision would enable AEM to bring civil

suits to recover money for the United States.  In reality his decision facilitated AEM's refund

action against the United States and potentially requires the United States to pay $25 million to

one of the companies that originally defrauded it.  If all litigants practiced such open deception of

judges, the public's confidence in the judicial system would be completely eroded and the people

would afford its decisions little, if any, respect.

The doctrine of judicial estoppel bars AEM from bringing any refund action against the

United States, and therefore the United States is entitled to summary judgment on the refund

claim.

### E.    The "Variance Doctrine" Prevents AEM From Claiming a Refund on Any Ground Other than the "Inadvertent" Inclusion Described in Its Amended Tax Returns, and There Is No Record Evidence Supporting That The Inclusion Was Inadvertent

In order to maintain any action in federal court for the refund of taxes, a taxpayer must

first file a claim for refund with the IRS.  26 U.S.C. § 7422(a); Hover v. United States, 2008 U.S.

Dist. LEXIS 108775, at *8 (M.D. Fla. Dec. 11, 2008).  An amended tax return can, if it meets the

4839385.1

requirements of the applicable regulations, constitute a refund request.  Id. at *9.  The refund

request must state in detail each ground upon which the refund is claimed.  Id.  "The taxpayer

must detail each ground on which he is claiming a refund, providing factual support therefore,

and subsequent litigation of the denial of the refund 'is limited to the grounds fairly contained

within the refund claim.'"  Hawco Equities, Inc. v. United States, 2000 U.S. Dist. LEXIS 13492,

*9 (S.D. Fla. August 28, 2000) (citing Charter Co. v. United States, 971 F. 2d. 1576, 1579 (11th

Cir. 1992)).

     Federal courts have no jurisdiction to entertain taxpayer allegations that impermissibly

vary or augment the grounds originally specified by the taxpayer in the administrative refund

request.  Charter Co., 971 F.2d at 1579; Hover, 2008 U.S. Dist. LEXIS 108775, at *10.  "The

purpose of the requirement, known as the 'variance doctrine,' is to afford the IRS an opportunity

to consider and dispose of the claim without the time and expense of litigation."  Hawco, 2000

U.S. Dist. LEXIS 13492 at *10.

     The only refund request that AEM filed was its amended tax returns.  The only basis for

the request that AEM described in the amended returns is that it "inadvertently included the

above wages and income and payroll tax liabilities of the following entities: Presidion VI, Inc.,

Presidion VII, Inc., and National MedStaff, Inc."  Mr. Cuthill, the only corporate witness who

AEM can proffer at trial and the person who signed the amended tax returns, has unequivocally

stated that he does not know what "inadvertent" means.

     Even if Mr. Cuthill could explain what inadvertent means, he has made abundantly clear

that he has no first-hand knowledge of AEM from the 2007 time frame.  Mr. Bocox has no first-

hand knowledge of AEM from the 2007 time period either.  (Ex. H, pgs. 8-9.)  The record is

- 19 -

devoid of any admissible evidence that the inclusion was inadvertent.  Given AEM's inability to explain what "inadvertent" means and its inability to point to record evidence that the inclusion was inadvertent, AEM cannot meet its burden of proof a trial and the United States is entitled to summary judgment on the refund issue.[3]

> **F.      Even if the Variance Doctrine Did Not Bar AEM From Raising Additional Bases for Its Refund Claim, the Two Additional Grounds it Disclosed in Discovery Are So Legally and Factually Deficient as to Bar Recovery**

Even if the Court were to find that the variance doctrine did not bar AEM from raising the additional grounds for refund in this case that were not raised in its refund request, the two other grounds that AEM has raised in discovery – 1) that the four companies did not comply with an unspecified provision of the tax code for filing consolidated 941 returns, and 2) that the four companies are not commonly owned – are insufficient to show that AEM is entitled to a refund.

In its response to the United States' contention interrogatory seeking AEM's legal and factual basis for objecting to the IRS' claim and seeking a refund of employment taxes, AEM stated only that "**[t]he subject companies did not comply with provisions in the tax code for filing consolidated 941 returns**."  AEM did not cite a single provision of the tax code that it allegedly violated in filing the consolidated employment tax returns, let alone present facts that would support a claim that the provision was violated and that AEM is entitled to a refund.

At this late stage in the case the United States should not be left to guess the basis for AEM's refund request.  These are precisely the type of conclusory allegations and unsupported speculation that summary judgment properly prevents from going to trial.  Moreover, even if

---

[3]Even assuming, for the purposes of this summary judgment motion, that AEM could explain what inadvertent means and show that the exclusion was inadvertent, the voluntary payment doctrine bars any recovery.  AEM has not disclosed any legal authority to the contrary.

4839385.1

AEM were to show that it did not comply with some provision of the tax code, <u>Consolidated Industries</u> makes clear that that is irrelevant to AEM's refund request.  It still cannot obtain a refund even if it did not comply with some provision in the tax code.

In his deposition, Mr. Cuthill asserted a second potential ground for a refund – that it was improper for AEM to file a consolidated tax return because the four companies were not commonly owned.  Here again, there is no admissible record evidence – Mr. Cuthill, again, has disavowed any personal knowledge as to these companies – that the companies were not commonly owned.  Nor has AEM cited to any statute that would prohibit the four companies from filing a consolidated return even if they were not commonly owned.  And, in any event, <u>Consolidated Industries</u> prevents AEM from obtaining a refund even if the companies were not commonly owned and even if the tax code prohibited consolidated tax returns when the companies were not commonly owned.

Therefore, these two belated arguments do not prevent a proper award of summary judgment to the United States on the refund request.

### G.    In No Event Is AEM Entitled to Receive a Refund Because the Money It Seeks Never Belonged to It

Even if the Court were to find that AEM had some legitimate basis for a refund claim among the three that it has raised (i.e., inadvertent inclusion, did not comply with unspecified statute for consolidated returns, companies could not file consolidated return because they were not commonly owned), AEM is still not entitled to a refund because the money that it seeks – that which is attributable to the employment taxes of the other three companies – never belonged to AEM in the first place.

- 21 -

As previously described, all four companies used a bank account that was owned by AEM. All four companies deposited their total payrolls into that account. That money was then used to pay the various expenses of the companies, including the employment taxes that AEM now seeks in refund. Because the four companies used the account as a common operating account, when the other three companies deposited money into that account the money did not automatically become AEM's property to the exclusion of the other three companies. See Ginsberg v. Goldstein, 404 So.2d 1098 (Fla. 3rd DCA 1981) (finding that depositing money in a bank account does not automatically transfer title to the money to the owner of the account). There would be no business purpose for the other three companies to transfer ownership of all money they deposited in that account to AEM. Also, as is clear from the records attached to AEM's objection to the IRS' claim, AEM kept detailed records segregating the finances of the four companies, there again showing no intent to transfer ownership of the money to AEM.[4]

The funds that were used to pay the employment taxes of the four companies as reported on the consolidated returns belong to the four companies in proportion to the amount of taxes that they owed. Only the money used to pay the employment taxes attributable to AEM belonged to AEM. The money used to pay the employment taxes attributable to the other three companies belonged to them. AEM simply cannot obtain a refund of money that did not belong to it.[5]

---

[4]As is described throughout this motion, time and time again Mr. Cuthill has stated that he has no first-hand knowledge about AEM from the relevant 2007 time period. So, even if the companies' intent about the ownership of the funds in the account were an issue, the United States would be entitled to summary judgment. AEM has no admissible evidence on this issue. Given its lack of evidence, it cannot meet its burden of proof at trial and it cannot preclude summary judgment.

[5]If the Court were to find that AEM should not have filed a consolidated return, then the remedy would be for the IRS to simply make assessments for the other three companies and credit them with the payments previously attributed to AEM's account. At no point should the

4839385.1

Even if the Court were to find that the three companies lost title to their funds when they deposited them in AEM's account, AEM held whatever amount of funds would be needed to cover the three companies' tax liabilities in trust for those companies and, indeed, ultimately for the United States. As the Florida Supreme Court has explained:

> A constructive trust is one raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it. Constructive trusts arise purely by construction of equity independently of any actual or presumed intention of the parties to create a trust and are generally thrust on the trustee for the purpose of working out the remedy. They are said to arise from actual fraud, constructive fraud and from some equitable principle independent of the existence of any fraud.

Quinn v. Phipps, 93 Fla. 805, 813 (1927)

The three companies deposited their income into the joint account in the name of AEM, and whatever expenses they had, including employment taxes, were to be paid using funds from this account. As AEM admitted in its responses to the United States' interrogatories, this arrangement extended back to 2006. Equity should not permit AEM to now claim ownership of the funds to the detriment of the other three companies' creditors simply because the joint account that all four companies used happened to be titled in AEM's name.

Indeed, whatever portion of the three companies' funds was necessary to cover the trust fund portion of their employment tax liabilities was held in trust as a matter of federal law for the United States directly. See 26 U.S.C. § 7501; Begier v. Internal Revenue Service, 496 U.S. 53 (1990). Equity dictates that the deposits of the other three companies' money to cover the non-trust fund portion of their tax liabilities was held by AEM in a constructive trust for the benefit of

---

money flow back to AEM as property of the estate, because the money never belong to AEM in the first instance.

4839385.1

these companies, which trust was discharged by the payment of those taxes to the United States. Because AEM held the companies' money in trust – either pursuant to statute for the trust fund portion or pursuant to a constructive trust for the non-trust fund portion – it never belonged to AEM and AEM cannot now seek a refund and claim ownership of that money.

Moreover, even if the Court were to find that trusts did not arise at the time that the three companies deposited their funds into the account in 2007, it should nevertheless find that a constructive trust arises as to any money that AEM receives as a result of its refund request, and accordingly that it cannot use any of that money for any purpose, such as to pay expenses of the estate. "A trust is constructed by equity to prevent an unjust enrichment of one person at the expense of another as the result of fraud, undue influence, abuse of confidence or mistake in the transaction that originate the problem." Foundation for the Developmentally Disabled, Inc. v. Step by Step Early Childhood Education and Therapy Center, Inc., 29 So.3d 1221, 1225-1226 (Fla. 2nd DCA 2010).

It is difficult to speculate about any ground that would entitle AEM to a refund. But, assuming for the sake of example, that AEM could receive a refund because it mistakenly filed consolidated tax returns when the law did not permit it to do so, it would be receiving a refund because of a mistaken belief about the underlying transaction (i.e., AEM thought it could file consolidated tax returns when it actually could not). AEM would find itself in the position of getting money back (which it would not be in if it had understood that it had to file separate returns and had done so in 2007) at the expense of the other three companies who would now have unpaid tax liabilities. This is unjust enrichment, and it is precisely the type of situation in which equity requires a constructive trust.

- 24 -

Thus, the statutory trust created by 26 U.S.C. § 7501 and the constructive trust created by Florida law mean that none of the funds paid over were AEM's to claim in refund. Moreover, even if AEM does prevail on any part of its refund claim on any ground, equity requires that the Court impose a constructive trust and prevent AEM from receiving a refund. Because AEM cannot recover in either case, the United States is entitled to summary judgment on the refund claim.

## III.    CONCLUSION

Although this case has been in discovery for more than a year, AEM has provided only conclusory statements and unsupported factual allegations. The record is devoid of any genuine, material factual issue for trial on the refund claim. Moreover, assuming the facts in the light most favorable to AEM, numerous legal doctrines bar AEM's refund claim.

Therefore, the United States is entitled to partial summary judgment denying AEM's request for a refund.

JOHN A. DICICCO
Principal Deputy Assistant Attorney General

    /s/ Brian R. Harris
Brian R. Harris
FL Bar No. 512001
Tax Division, U.S. Department of Justice
P.O. Box 14198
Washington, D.C.  20044
Telephone:  (202) 514-6483
Fax:  (202) 514-9868
E-mail:  brian.r.harris@usdoj.gov

Of Counsel:

Robert E. O'Neill
United States Attorney

- 25 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing UNITED STATES' MOTION FOR PARTIAL

SUMMARY JUDGMENT was filed with the EM/ECF system on March 28, 2011, which will send

notice to –


R. Scott Shuker
Mariane Dorris
Justin M. Luna
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
390 N. Orange Ave., Suite 600
Orlando, FL 32801
*Attorneys for Debtors*

Elena L. Escamilla
Office of the United States Trustee
135 W. Central Blvd., Suite 620
Orlando, FL 32806
*United States Trustee*


/s/ Brian R. Harris
Trial Attorney, Tax Division
U.S. Department of Justice

4839385.1