UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:

AEM, INC.,                              Case No. 6:08-bk-04681-KSJ
                                        Chapter 11

       Debtor.

_____/

## UNITED STATES' RESPONSE IN OPPOSITION TO AEM'S EMERGENCY MOTION TO BIFURCATE THE HEARING ON ITS OBJECTION TO CLAIM NO. 4 AND TO AMEND ITS CLAIM OBJECTION AND FILE AN ADVERSARY PROCEEDING

The parties are now only three days away from the April 22, 2011, trial on both AEM's objection to the IRS' claim and AEM's refund request. On April 15, 2011, only a week before trial, AEM filed a motion asking the Court to grant it an extension of time to respond to the United States' motion for summary judgment so that AEM's response would be due after trial. [D.E. 266.] As the United States described in its response [D.E. 270], the reasons that AEM gave for seeking an extension are pretextual, and the real motivation for AEM's motion is that AEM has no legal or factual basis for opposing the United States' summary judgment motion.

If AEM's motion for an extension did not clearly illustrate that the United States is entitled to summary judgment on AEM's refund request and that AEM has no basis for opposing the United States' motion, AEM now files a motion only days before trial to bifurcate the refund claim. Specifically, AEM requests that the Court 1) bifurcate the refund request so that only the objection to claim is heard at the trial, 2) allow AEM to file an adversary proceeding on the refund claim and seek a refund on a ground that AEM has not raised in the nearly 18 months that this case has been pending – that AEM's payment of its taxes in 2007 was a fraudulent transfer, and, 3) presumably, although AEM does not expressly request in its motion, open and conduct

discovery on this new ground for a refund of its taxes.

AEM attempts to paint its motion as a procedural formality to simply "formally set forth all legal theories of recovery for the AEM Refund. [D.E. 269, pg. 9.] That could not be further from the truth. In the face of the United States' summary judgment motion, AEM essentially seeks to "redo" it refund claim under a new legal theory – fraudulent transfer. This new legal theory would necessitate the parties beginning discovery again, because the facts that underlie AEM's current refund claim – whether it "inadvertently" included the income of three other companies on its employment tax returns – are not relevant to whether the payment of AEM's taxes was a fraudulent transfer. Thus, if AEM's motion were granted, this case might continue for another 6-12 months.

AEM's motion should be rejected for numerous grounds. First, the fraudulent transfer claim is legally and factually distinct from AEM's refund claim, which is ready for trial. There would be no reason to delay a decision on AEM's refund claim even if the Court were to allow AEM to belatedly initiate an adversary alleging a fraudulent transfer. Second, AEM does not meet the two-part test for initiating an adversary proceeding that relates back to its objection to the IRS' claim. Third, bifurcation would be a needless waste of the Court's resources by having two trials, would needlessly drive up the expenses for the Estate and the United States, and would needlessly impose on third-party witnesses who may now be called upon to give a second deposition and testify at a second trial.

I.     **AEM's Refund Claim is Ripe for Decision on Summary Judgment or Trial, and a Legally and Factually Distinct Fraudulent Transfer Claim is not a Basis for Delaying a Resolution of AEM's Refund Claim**

AEM's refund claim is ready for decision on summary judgment or at trial on April 22nd,

4839385.1

and it is legally and factually distinct from any fraudulent transfer claim.  Thus, even if the Court were to permit AEM to assert a fraudulent transfer claim at this late stage in the litigation, that would not be a basis for delaying a resolution of AEM's refund claim.

Under the variance doctrine, AEM's refund request in this case is strictly limited to the single ground that AEM set forth in the administrative claim that it filed with the IRS – that the inclusion of the income of the three other companies in its tax return was "inadvertent" – and the Court does not have jurisdiction to hear a refund claim on any other basis  [D.E. 251, pgs. 18-20.]  Thus, the only evidence relevant to AEM's refund claim is whether it included the income of the other three companies in its employment tax return for the first and second quarter of 2007 and, if it did, whether that inclusion was inadvertent.  The facts underlying AEM's current refund request are completely different than the facts that would underlie a fraudulent transfer claim.

The law governing fraudulent transfer is set forth in 11 U.S.C. § 548.  A fraudulent transfer claim would include discovery and trial testimony on:

1) whether the payment of AEM's taxes was done "with actual intent to hinder, delay, or defraud any entity to which the debtor was or became ... indebted," which would necessarily involve an analysis of AEM's outstanding debts at the time it paid its employment tax liabilities;

2) whether AEM received less than reasonably equivalent value in exchange for the payment of its taxes;

2) whether AEM was insolvent on the date it paid its taxes or became insolvent as a result of the payment;

3) whether AEM had unreasonably small capital;

4) whether AEM intended to incur debts beyond its ability to pay; and

5) whether AEM's payment of its taxes was made for the benefit of

4839385.1

an insider.

None of these factual issues are involved in AEM's current request for a refund.

A fraudulent transfer claim could take at least 6-12 months to litigate. The United States would have to begin discovery again by serving written discovery to AEM on the facts relevant to a fraudulent transfer claim. Litigating a fraudulent transfer claim would likely involve retaining expert witnesses to perform an solvency/insolvency analysis of AEM. This would include analyzing AEM's assets and outstanding liabilities, and, depending on the state and organization of AEM's records, might involve a total reconstruction of AEM's ledgers and balance sheets.

This would be no small task considering that Mirabilis and all its related companies, including AEM, literally have a warehouse full of documents. Just finding all the documents related to AEM's assets, liabilities and other relevant financial matters could conceivably take dozens or a hundred or more hours. Discovery would be complicated by the fact that all the employees of AEM from that time period are gone and none would be readily available to help search for and identify the relevant documents. Moreover, the records of a company involved in a $200 million employment scheme are highly suspect. If the records of the company were even in an organized and usable format, they would nevertheless still need to be subject to additional scrutiny, such as looking at underlying source documents, that might otherwise not need to be done in a different case. And if they are not in an organized and usable format, then this would certainly compound the amount of time needed for discovery.

Presumably AEM knew the basis of its refund claim when it filed it nearly a year and a half ago. To the extent that it needed any discovery on that refund claim, it has had ample time.

- 4 -

The United States has filed for summary judgment on AEM's refund claim, and the parties are only days away from trial. If AEM wants to abandon its refund claim and seek recovery under a new theory, then it should consent to summary judgment against it on the refund claim. There is simply no reason to delay a resolution of AEM's refund claim for 6-12 months or more while the parties conduct discovery on and litigate an unrelated legal and factual claim. Therefore, the Court should deny AEM's motion to bifurcate and either grant summary judgment in favor of the United States on AEM's refund claim or allow the refund claim to proceed to trial.

II.    **AEM Has Not Met the Two-Part Test for Initiating an Adversary Proceeding that Relates Back to Its Objection to the IRS' Claim**

AEM's motion to bifurcate and initiate an adversary proceeding that relates back to AEM's objection to the IRS' claim should be denied because a fraudulent transfer claim is unrelated to AEM's original objection and the discovery that was done in this case. AEM does not meet the two-part test set forth in its motion for initiating an adversary proceeding that relates back to its original objection to the IRS' claim.

A.    **AEM's Objection Does Not Provide the United States With Fair Notice of a Fraudulent Transfer Claim**

As AEM states in its motion, the first part of the test is that "the initial document [claim objection] must provide the claimant with fair notice of the debtor's claim and the grounds therefor." [D.E. 269, pg. 8.] AEM then goes on to state that "[f]air notice demands that the claimant be sufficiently apprised of the existence and basis of the objection." [D.E. 269, pg. 8.]

There is nothing in AEM's objection to the IRS' claim that would put the United States on notice that AEM considers its payment of its taxes to have been a fraudulent transfer. [D.E. 162.] AEM's objection simply states that "the IRS has miscalculated, and AEM has overpaid, its

- 5 -

withholding taxes" and that "AEM improperly paid withholding taxes for four distinct and separate companies." [D.E. 162.]

AEM's motion places great weight on the comments of William Cuthill at a hearing on October 16, 2009, when Mr. Cuthill said that he was considering filing a claim for a refund on the basis that AEM's employment tax returns were "fraudulent" because they were not signed by an officer or director who was authorized to sign the returns. [D.E. 269, pg. 3.] Although AEM does not explicitly state in its motion, it seems to imply that this should have put the United States on notice of the fraudulent transfer claim that AEM now seeks to bring 18 months later.

As an initial matter, whether the returns were invalid (or, as Mr. Cuthill characterizes it, "fraudulent") because they were not signed by an officer or director, is separate from whether AEM's payment of the taxes reported on those returns was a fraudulent transfer. For example, even if the returns were invalid because they were not signed by an officer or director, if AEM made the underlying payment without "actual intent to hinder, delay, or defraud an entity" to which it was indebted, if AEM received reasonably equivalent value for its payment of the taxes, or if AEM was solvent before and after it made the payment, then its payment of the taxes was not a fraudulent transfer. So, Mr. Cuthill's claim that the returns were "fraudulent" does not put the United States on notice that AEM was contending that the underlying payment of the taxes was a fraudulent transfer pursuant to 11 U.S.C. § 548.

Even if there was some relation between whether the return was fraudulent and whether the underlying payment was a fraudulent transfer, AEM abandoned this issue when it failed to raise it in its administrative claim for a refund or in discovery in this case. Therefore, despite Mr. Cuthill's comments at the October 2009 hearing, the United States would have had no reason to

4839385.1

believe that AEM was seeking a refund in this case on the basis of an alleged fraudulent return or fraudulent transfer.

When AEM subsequently filed its administrative claim for a refund, it did not seek a refund on the ground that its returns were fraudulent.  AEM only sought a refund on the ground that it inadvertently included the income of the other three companies.  As the United States previously described, under the variance doctrine, the only ground that is relevant to AEM's refund claim is what it set forth in its administrative claim.  Any other ground is irrelevant, and the Court does not have jurisdiction to consider it.  By not including the allegation that its original returns were fraudulent in its administrative request for a refund, AEM forfeited any right to seek a refund on this ground.[1]  There would be no reason for the United States to believe that AEM was seeking a refund on a ground that was not set forth in its administrative request for a refund, and there would be no reason for the United States to take discovery on such an irrelevant issue.

Indeed, when discovery started in this case, AEM did not raise the issue that the returns were allegedly fraudulent as a basis for its objection IRS' claim or its refund request, and the parties did not conduct discovery on this issue.  Despite not having raised this issue throughout discovery, AEM indicated at the pre-trial conference on February 25, 2011, that it nevertheless intended to raise this issue at trial.  The United States has filed a motion in limine pursuant to

---

[1]Despite an extensive discussion of the variance doctrine in the United States' motion for summary judgment [D.E. 251], AEM has failed to even address this variance doctrine in any of its subsequent pleadings, including its motion for sanctions [D.E. 260], its motion for additional time to respond to the United States' MSJ [D.E. 266], and its motion to bifurcate [D.E. 269], let alone show how AEM could seek a refund on grounds that were not stated in its administrative claim for a refund.

4839385.1

Fed. R. Civ. P. 37 to exclude AEM from relying on this ground at trial as a basis for its objection to the IRS' claim or its refund request because it did not properly raise it during discovery.  [D.E. 261.]

AEM later alleges in its motion that "AEM has consistently advised the IRS that" its first and second quarter employment tax returns were "not authorized to be filed," that "the funds transferred to the IRS during 2007 for the payment of 941 taxes were the property of AEM," and that "AEM received no value for the payment of the 941 taxes owed by the three non-debtor entities."  Despite its allegations that AEM has consistently advised the IRS of these facts, its motion fails to include a single citation to any discovery responses or other record evidence in this case that would show AEM raised any of these issue in discovery.  As the United States discussed in its motion in limine, AEM did not raise these issues in discovery, and they should be excluded at trial.  [D.E. 261.]  For the same reason, they cannot be a basis for AEM's motion to bifurcate.

AEM has not met the first prong of the two-part test, that its objection sufficiently apprised the United States that it believes the payment of its taxes was a fraudulent transfer. AEM did not raise this as an issue in its objection to the IRS' claim, it did not raise this as an issue in the administrative request for a refund that it filed with the IRS, and it did not raise this as an issue in discovery.  AEM only first raised the issue of a fraudulent transfer in its motion to bifurcate.  Therefore, there is no basis for allowing AEM to file an adversary proceeding on a fraudulent transfer claim that relates back to AEM's original objection to the IRS' claim.

   **B.     A Fraudulent Transfer Claim Would Be Based on Different Evidence Than AEM's Refund Request**

4839385.1

Second, AEM describes that "the claim raised in the new pleading must 'arise from the same conduct transaction, or occurrence' as the original claim" and that a key determinate of this second part of the test is whether "the claim to be added will likely be proved by the 'same kind of evidence' offered in support of the original pleading." [D.E. 269, pg. 9.]  In its motion AEM does not set forth the legal standard that would govern its fraudulent conveyance claim nor does it even attempt to explain how the same evidence that would support its refund request would be used to support a fraudulent transfer claim.  As the United States discussed in Section I, *infra*, the facts that would support a fraudulent transfer claim are completely distinct from the facts that are relevant to AEM's refund claim.  Thus, AEM fails to meet the second prong of the test.

As AEM does not meet the two-part test, and the Court should deny AEM's request to bifurcate the trial and initiate an adversary proceeding that relates back to its original objection to the IRS' claim.  The Court should additionally grant the United States summary judgment on AEM's refund claim or allow that claim to proceed to trial.

## III.    An Adversary Proceeding Would Waste Judicial Resources and Needlessly Drive Up Expenses for the Estate and for the United States

Allowing AEM to institute an adversary proceeding at this late stage in the case would waste judicial resources, and it would needlessly drive up expenses for the Estate and for the United States.  If AEM's motion came at the beginning of discovery, it might have some merit. The motion would have been more akin to a procedural formality, and the parties would have been able to conduct discovery in this case with full knowledge that, in addition to claiming a refund because the inclusion of the other three companies taxes in its employment tax returns was "inadvertent," AEM was also claiming that its payment of its employment taxes was a

4839385.1

fraudulent transfer.  The parties would only have needed to conduct discovery once, and the Court would have only needed to hold one trial on both issues.

However, by seeking to bifurcate its objection and refund claim only days before trial, AEM's motion would necessitate two trials where previously all issues would have been able to be resolved in one trial.  This piecemeal litigation is a waste of judicial resources.

Moreover, it would also drive up costs for both the Estate and the United States.  In addition to having to bear the costs associated with two trial, the parties now have to essentially begin discovery again on AEM's fraudulent transfer claim.  The United States would have to duplicate much of the discovery it already conducted in this case.  For example, it would have to serve new document requests and interrogatories to AEM asking about the fraudulent transfer claim.  It would have to depose some of the same witnesses for a second time to ask about facts relevant to AEM's fraudulent transfer claim.  And it would have to go back to AEM's document warehouse and review the same documents that it had already examined but this time looking for documents bearing on AEM's fraudulent transfer claim.

Finally, this would inconvenience many third-party witnesses.  Some of these witnesses who have already been deposed would have to be re-deposed on the issue of AEM's fraudulent transfer claim.  And some of the witnesses who will testify at the trial on April 22, 2011, might be called to testify again when AEM's fraudulent transfer claim goes to trial.  Many of these witnesses have had to take time of their jobs to attend their deposition and the upcoming trial. They have had to make daycare arrangements and, in some cases, have had to travel to Orlando from out of town.  This is difficult and inconvenient to do once, but now AEM seeks to impose this burden on some witnesses twice.

4839385.1

For these reasons, the Court should deny AEM's request to bifurcate the trial and initiate an adversary proceeding.

## IV.    Conclusion

The Court should not grant AEM's motion to bifurcate its objection to the IRS' claim and its refund request.  AEM's refund request is ripe for decision on summary judgment, given that AEM has not opposed the United States' motion, or at trial.  There is no reason for a delaying a decision on AEM's refund claim even if the Court were to permit AEM to institute an adversary proceeding alleging a fraudulent transfer.  Moreover, AEM has not met the two-part test for instituting an adversary proceeding that relates back to its original objection to the IRS' claim, and allowing it bring a fraudulent transfer claim at this late state in the case would waste judicial resources and needlessly drive up costs for both the United States and the Estate.

Therefore, the Court should deny AEM's motion and grant summary judgment in favor of the United States on AEM's refund claim, or allow AEM's refund claim to proceed to trial.


JOHN A. DICICCO
Principal Deputy Assistant Attorney General

   /s/ Brian R. Harris
Carol Koehler Ide
Brian R. Harris (FL Bar No. 512001)
Tax Division, U.S. Department of Justice
P.O. Box 14198
Washington, D.C.  20044
Telephone:  (202) 514-5887, -6483
Fax:  (202) 514-9868
E-mail: carol.koehler.ide@usdoj.gov
            brian.r.harris@usdoj.gov

Of Counsel:

- 11 -

Robert E. O'Neill
United States Attorney

4839385.1

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that the foregoing UNITED STATES' RESPONSE IN OPPOSITION TO

AEM'S EMERGENCY MOTION TO BIFURCATE THE HEARING ON ITS OBJECTION TO

CLAIM NO. 4 AND TO AMEND ITS CLAIM OBJECTION AND FILE AN ADVERSARY

PROCEEDING was filed with the EM/ECF system on April 18, 2011, which will send notice to

_

R. Scott Shuker
Mariane Dorris
Justin M. Luna
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
390 N. Orange Ave., Suite 600
Orlando, FL 32801
*Attorneys for Debtors*

Elena L. Escamilla
Office of the United States Trustee
135 W. Central Blvd., Suite 620
Orlando, FL 32806
*United States Trustee*

/s/ Brian R. Harris
Trial Attorney, Tax Division
U.S. Department of Justice

- 13 -

4839385.1