UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**In re:**                                     CASE NO.  6:08-bk-04681-KSJ

**AEM, INC.**                                  CHAPTER 11

                **Debtor.**

_____/

## AEM, INC.'S RESPONSE TO THE UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING CLAIM NO. 4
### (Internal Revenue Service)

**AEM, INC.** ("AEM" or "Liquidating Debtor"), as the Liquidating Debtor in the

above referenced case, hereby responds pursuant to Federal Rules of Bankruptcy Procedure

7056 and 9014 to the United States' Motion for Partial Summary Judgment ("Summary

Judgment Motion") (Doc. No. 251), and in support thereof states as follows:

1. This Court has jurisdiction over the Motion pursuant to 28 U.S.C.§§ 157 and

1334. Venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§

1408 and 1409.  The statutory predicate for the relief sought herein is §105 and §1141 of

Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. On June 5, 2008, AEM filed a voluntary petition for reorganization under Chapter

11 of the Bankruptcy Code ("AEM Petition Date")[1].  Prior to the AEM Petition Date, AEM

had been engaged in the business of providing management and payroll services to

employers.

---

[1] Previously, on May 27, 2008 ("Mirabilis Petition Date"), Mirabilis Ventures, Inc. ("Mirabilis") filed its
voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.

3. On October 9, 2009, AEM filed an Objection to Allowance of Claim No. 4 filed by the Internal Revenue Service ("Claim Objection") (Doc. No. 162). The basis for the Claim Objection was that the Internal Revenue Service ("IRS") had miscalculated the 941 taxes owed by AEM, and that AEM had actually overpaid its withholding taxes.

4. On October 16, 2009, the Bankruptcy Court conducted a hearing ("Confirmation Hearing") to consider the confirmation of the Joint Amended Plan of Liquidation submitted by Mirabilis, Hoth Holdings, LLC and AEM, dated as of August 14, 2009 (Doc. No. 234), and as modified on October 15, 2009 (Doc. No. 371) (collectively, the "Plan"). On October 27, 2009, the Bankruptcy Court entered an order confirming the Plan ("Confirmation Order") (Doc. No. 375).

5. On November 9, 2009, the IRS filed a Response to the Claim Objection (Doc. No. 179). In the response, the IRS did not dispute the validity of the claimed overpayment, but simply requested an opportunity to substantiate the amount of federal payroll tax deposits. At this time, the IRS still did not admit the following: (i) Claim No. 4 was based upon an unauthorized Form 941 tax return; (ii) Claim No. 4 included Form 941 taxes allegedly owed by three non-debtor entities; and (iii) the IRS had no evidentiary basis for the calculation of the alleged unpaid 941 taxes asserted in Claim No. 4.

6. On or about December 2099, AEM filed amended first and second quarter Form 941 tax returns for 2007, which included only the wages, income and payroll tax liabilities of AEM, and requested a refund in the total amount of $25,155,522 (the AEM Refund). As of the date of filing this Response, the IRS still has not disputed the validity or accuracy of

the amended first and second quarter Form 941 quarterly tax returns for 2007.  See W. Wimbish Deposition p. 32. (Excerpts from the deposition are attached hereto as **Exhibit A**).

7.  On March 28, 2011, prior to the exchange of documents and the depositions of witnesses, the IRS filed the Summary Judgment Motion (Doc. No. 251).  The Summary Judgment Motion pertains only to a refund, not any liability underlying the claim.  In the Summary Judgment Motion, the IRS asserts seven legal theories as to why AEM is not entitled to a refund: (i) doctrine of voluntary payment; (ii) judicial estoppel; (iii) variance doctrine; (iv) failure to state a claim; (v) tax deposits were not the property of AEM; (vi) constructive trust; and (vii) unjust enrichment.

**UNDISPUTED FACTS:**
**THE IRS CLAIM NO. 4 AND AMENDED CLAIM NO. 4**

8.  The Bankruptcy Court established December 2, 2008 as the claims bar date for filing proofs of claim by a governmental unit in the AEM bankruptcy case.

9.  On July 10, 2008, the IRS filed claim no. 4 in the AEM bankruptcy case in the amount of $3,195,661.83 purportedly based upon AEM's 941 tax liability for the second quarter of 2007 ("Claim No. 4").  Claim No. 4 states that it was an unsecured priority claim for WT-FICA tax in the amount of $2,492,059.53 and a general unsecured claim for WT-FICA tax in the amount of $703,602.30.  Although the proof of claim form includes a section requiring a secured creditor, including a creditor with a right of setoff, to indicate their secured status, the IRS did not complete the "secured claim" section of the form.  Claim No. 4 did, however, state that the "United States has not identified a right of setoff or

counterclaim. However, this determination is based on available data and is not intended to waive any right of setoff ..."

10.  On August 6, 2010, the IRS filed an amended proof of claim without obtaining leave of court. The amended proof of claim asserted a setoff right of $1,122,848.29, and an unsecured priority claim in the amount of $2,072,813.54 (the "Amended Claim No. 4"). Although a violation of the automatic stay, the amended proof of claim attempts to assert a new secured claim against the Liquidating Debtor based upon the income tax refund owed to Mirabilis. The amended proof of claim does not assert a setoff right with respect to the AEM Refund.

11.  Neither Claim No. 4 nor Amended Claim No. 4 articulate a factual or legal basis for AEM's liability for the outstanding 941 tax liability of three non-debtor entities. Moreover, there is no documentation attached to either Claim No. 4 or Amended Claim No. 4.  The IRS did not attach the second quarter of 2007 Form 941 tax return, which was allegedly submitted by Frank Amodeo as "Liquidating Agent" of AEM (the "Second Quarter Form"), nor did the IRS attach a Certificate of Assessment.

## BASIS FOR AEM'S ALLEGED FORM 941 TAX LIABILITY

12.  The sole basis for Claim No. 4 is the unauthorized and inaccurate Second Quarter Form. Frank Amodeo was not the president, vice-president, treasurer, assistant treasurer, chief accounting officer or any other officer, agent, or fiduciary duly authorized to the file 941 quarterly tax returns for AEM. See J. Jaiman Deposition, pp. 26-27. (Excerpts from the deposition of J. Jaiman are attached hereto as **Exhibit B**).  Furthermore, the Second Quarter

Form inaccurately included the wages, income, and payroll tax liabilities of Presidion VI, Inc., Presidion VII, Inc. and National MedStaff, Inc. <u>AEM Exhibit 33</u>. AEM was neither responsible for nor authorized to file Form 941 tax returns on behalf of these entities. No Trust Fund Recovery Penalty has been assessed against AEM for the 941 taxes owed by Presidion VI, Inc., Presidion VII, Inc. and National MedStaff, Inc., pursuant to either 26 U.S.C. §6672 or 26 U.S.C. §3505. <u>S. Summers Deposition</u> pp. 24-31. (Excerpts from deposition of S. Summers are attached hereto as **Exhibit C**).

13. As testified to by Sherrill Summers, one of the Corporate Representative of the IRS, the only inquiry made into the liability of Claim No. 4 was the review of the Integrated Data Retrieval System, a computer system consisting of compilations of tax accounts. <u>S. Summers Deposition</u> p. 6. Ms. Summers did not review the Second Quarter Form or talk to any representatives of AEM. <u>See id</u>. at p. 7. Ms. Summers has no knowledge of the accuracy or validity of the underlying Second Quarter Form.

14. Mr. Willie Wimbish, the second Corporate Representative of the IRS who allegedly performed an audit of the amended first and second quarter Form 941 quarterly tax returns for 2007, testified that although it is common practice to "get the underlying tax returns and the statement contained therein and if there's additional questions [he would] contact the principals involved," in this audit he did not. <u>W. Wimbish Deposition</u> p. 12.

15. Rather than review the underlying accounting records of AEM and speak with its principals, Mr. Wimbish reviewed the plea agreement entered into by Mr. Frank Amodeo and the related grand jury testimony and determined that because Mr. Amodeo controlled and

owned AEM and the three non-debtor entities, the Second Quarter Form correctly

consolidated all four companies tax liabilities. See id. at pp. 22-26. However, the District

Court for the Middle District of Florida found that "Amodeo's statement that he 'exercised

or attempted to exercise' control over Mirabilis's management suggests that he did not

actually control the company." AEM's Exhibit 29 p. 7. Additionally, the District Court

found that AEM only "owned two of the PEOs whose payroll tax funds were diverted

pursuant to Amodeo's scheme," but that it did not "own or operate any of the PEOs whose

payroll tax funds were misused." See id. at pp. 2, 7.

16. Mr. Wimbish did concede that in order to file a "consolidated Form 941 quarterly

tax return" AEM would have had needed the permission of the District Director and have

filed out a Form 2678. W. Wimbish Deposition pp. 26-28. Mr. Wimbish also admitted that

he has not seen a Form 2678 filled out by AEM or a letter giving AEM permission to file

consolidated Form 941s. See id.

17. According to Jodi Jaiman, the President of AEM from April 2007 through May

2008, Mr. Amodeo was not a shareholder or a director of Mirabilis or AEM, but that Mr.

Amodeo "was cooperating with the government with regards to the investigation. And that

he had been left in charge of these entities since he was the one that had all of the

knowledge." J. Jaiman Deposition pp. 12- 17. Although Mr. Amodeo did have signatory

authority over AEM's bank account with Bank of America, there was no intent that Mr.

Amodeo would have any other corporate authority. See id. at pp. 26-27. Ms. Jaiman testified

that she did not authorize Mr. Amodeo to file the Second Quarter Form, nor did she review

the Second Quarter Form before it was filed. See id. at pp. 29-30. Moreover, Ms. Jaiman believed that all the 941 taxes had been paid because the government had conditioned the sale of AEM's book of business to O2HR upon all of the taxes being current. See id. at p. 30.

18. According to Mr. Shane Williams, the Vice-President of AEM, although AEM did not authorize Mr. Amodeo to file tax returns on behalf of the company, he believed that based upon Mr. Amodeo's status as a secured creditor of Mirabilis and pursuant to an agreement with Randy Gold, he had the authority to file tax returns. S. Williams Deposition, pp. 16, 24. (Excerpts from the deposition of S. Williams are attached hereto as **Exhibit D**). However, Mr. Williams testified that he had no knowledge of any authority granted to Mr. Amodeo to file a "consolidated Form 941" or pay other companies' taxes. See id. at p.25.

19. It is undisputed that Mr. Amodeo was not authorized by AEM to: (i) file Form 941 for either the first or second quarter of 2007; or (ii) use funds from AEM's bank account to pay the tax obligations of other non-related companies. It is clear that the officers of AEM believed that AEM was current on its tax obligations based upon the government's approval of the sale of AEM's book of business. AEM had no knowledge of these tax returns or the payment of the three non-debtor entities taxes.

## TAX DEPOSITS PROPERTY OF THE ESTATE

20. The funds transferred by AEM to the IRS as "tax deposits" were property of AEM because all the tax deposits were drawn from AEM's bank account. The clients of AEM, Presidion VI, Inc., Presidion VII, Inc. and National MedStaff, Inc. deposited funds

directly into AEM's bank account. <u>R.W.Cuthill Deposition</u>, pp. 117-118. These funds were commingled, dissipated, and rendered untraceable to any particular client of AEM, Presidion VI, Inc., Presidion VII, Inc. or National MedStaff, Inc. <u>See id</u>. (Excerpts from the deposition of R.W. Cuthill are attached hereto as **Exhibit E**).

21.   As testified to by Mr. Cuthill, the customers of AEM, Presidion VI, Inc., Presidion VII, Inc. and National MedStaff, Inc. all directly deposited funds into accounts owned by AEM. <u>See id</u>.  AEM did not segregate the funds between the four companies. <u>See id</u>. at p. 118.

22. On October 20, 2010, Mr. Brian Harris advised the Court that the IRS was attempting to unravel the financial transactions between AEM, Presidion VI, Inc., Presidion VII, Inc. or National MedStaff, Inc.

> As your Honor is probably aware, we're trying to unravel the fiances of AEM and three related corporations with respect to employment taxes for the first and second quarters of 2007 … So where we are right now is we've had to turn back to the source documents. Namely, sending subpoenas to the banks trying to get the records for these four entities and rebuild, reconstruct what was happening in that time frame ourselves. We are starting that process. The subpoenas are out, but given the size of the companies, the transactions, the bank accounts, statements, things like that, we like we would need at least another 120 days to complete that process. <u>October 20, 2010 Hearing Transcript</u>, pp, 14-15. (Mirabilis Doc. No. 637).

23.  The IRS has failed to produce any such accounting of the bank account of AEM. The IRS has been unable to trace these funds to any particular client of AEM, Presidion VI, Inc., Presidion VII, Inc. or National MedStaff, Inc.

## IRS HAS KNOWN BASIS FOR REFUND

24. At the Confirmation Hearing, Ms. Ide discussed the pending objections to the claims filed by the IRS. With respect to Claim No. 4, Ms. Ide stated:

> Based on a return filed by AEM, AEM now wants to file amended Form 941 Returns, breaking itself out from three non-debtor entities. And, you know, obviously that can be looked at more quickly than the IRS' usual three year audit period if we have all of the work papers and all the tax returns filed by all of the entities that they're trying to break out. And of course, we have to substantiate where all of the workers worked and all of that, but I imaging if a 941 was filed for AEM craving it out, then there will be sufficient documentation and if that can just be sent to me, we can get people working on it. October 16, 2009 Hearing Transcript p. 44. (Mirabilis Doc. No. 596)

25. When asked when AEM anticipated filing the amended Form 941 Returns for the first and second quarter of 2007, Mr. Cuthill advised the Court of the following:

> Well, I haven't decided whether to file it yet. ... It would create an 18 million dollar refund to the Debtor from the IRS and I haven't discussed that with the IRS. I have − we filed an objection to their claim because the claim consolidated four corporations, three of which were not subsidiaries of Mirabilis. The payroll tax return was signed by not an officer or director or an authorized party to Mirabilis, and so, the return itself was a fraudulent return. You know, I probably need to discuss with the IRS whether I'm actually going to file for the 18 million dollar refund. See id. at p.45.

26. Ms. Ide responded to Mr. Cuthill and the Court by stating

> And of course, your Honor, if we find the 18 million dollars has actually been paid to the IRS by these entities, we will be more than happy − [The Court: But you're not anticipating that.] We didn't see a bag of 18 million dollars coming into us anytime in the last few years, so that's a pretty foundational issue there. Thank you, your Honor. See id.

27.  On May 19, 2010, at a status conference on the Claim Objection, Mr. Shuker addressed the combination of the evidentiary hearing on the Claim Objection with the return of the AEM Refund as follows:

> Your Honor, I don't know about the nine folks. I think Ms. Ide is combining the request for refund with the claim objection.  This happened, as you will recall, Mirabilis, the same type of thing, they were losing focus of the fact that this is just an objection to their 3 million dollar claim.  If she wants to combine that with the trial to give us 26 million if we win, I'm happy to do that, but I don't think that's what's teed up and that's why I though we would be ready to go by August ... May 19, 2010 Hearing Transcript, pp. 8-9. (Excerpts of the May 19, 2010 Hearing Transcript are attached hereto as **Exhibit F**).

28.  On behalf of the IRS, Ms. Ide responded, "Your Honor, we assumed it was teed up because in the objection to claim, what they said is not only do we not owe the 3 million dollars, but you owe us." See id. at pp. 9-10.

29.  Mr. Shuker then agreed to combining the Claim Objection with the request for the AEM Refund, "[i]f they're not going to raise a procedural objection that it wasn't teed up properly, then yes, let's have formal pre-trial and do the whole thing in one swoop." See id. at p. 10.

30.  The IRS has known since October 2009 that the original basis for the Claim Objection was the following: (i) Claim No. 4 incorrectly included amounts owed by three other non-debtor entities; and (ii) AEM had fully paid its 941 tax obligations.  AEM has consistently advised the IRS that:(i) the alleged original first and second quarter 2007 Form 941 quarterly tax returns filed on behalf of AEM were incorrect and not authorized to be filed; (ii) the funds transferred to the IRS during 2007 for the payment of 941 taxes were the

property of AEM; (iii) the amount of funds transferred to the IRS during 2007 was in excess of the 941 taxes owed by AEM; (iv) AEM received no value for the payment of the 941 taxes owed by the three non-debtor entities.

## LEGAL ARGUMENT

31. Federal Rule of Civil Procedure 56 requires the threshold inquiry of determining whether there is a need for a trial. Specifically, whether there are any genuine, material factual issues that can only properly be resolved by a finder of fact because they may reasonably be resolved in favor of either party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Earley v. Champion Int'l Corp., 907 F.2d 1077,1080 (11th Cir. 1990).

32. A fact is material if it might affect the outcome of the suit under the governing law. See In re St. Theresa Properties, Inc., 152 B.R. 852 (Bankr. S.D.N.Y. 1993).

33. Therefore, a motion for summary judgment must be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor. See J.E. Mamiye & Sons, Inc. v. Fidelity Bank, 813 F.2d 610, 618 (3d Cir. 1987).

34. Summary judgment is improper "[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact." Cornelius v. Highland Lake, 880 F.2d 348, 351 (11th Cir. 1989).

35. "It is true that the issue of material fact required by Rule 56 (c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the

party asserting its factual existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." See Anderson, 477 U.S. at 248-249, 160 S.Ct. 2505 (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

36.  The non-moving party, the Plaintiff, bears the burden of coming forward with sufficient evidence on each element that the Plaintiff has the burden of proving at trial. See Earley, 907 F.2d at 1080.  The evidence the Plaintiff produces in order to avoid summary judgment need not be in a form that would be admissible at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

37.  The court may not weigh evidence to resolve a factual dispute; if a genuine issue of material fact is present, the court must deny summary judgment. See Hutcherson v. Progressive Corp., 984 F.2d 1152, 1155 (11th Cir. 1993).  Likewise, if reasonable minds could differ on the inferences arising from undisputed facts, then the court should deny summary judgment. See Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992).

38.  The moving party, in the instant case, the IRS, bears the burden of establishing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 322-23.

39. In considering a motion for summary judgment, a court must consider the evidence in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress and

Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (citing United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)).

I.    **THE IRS HAS FAILED TO PRODUCE EVIDENCE SUBSTANTIATING AEM'S ALLEGED TAX LIABILITIES (FORM 941) FOR THE SECOND QUARTER OF 2007.**

40. As a general rule in bankruptcy litigation a creditor files a claim pursuant to 11 U.S.C. §501. By doing so a creditor receives the benefit of a presumption that the properly filed "proof of claim constitutes *prima facie* evidence of the validity and amount of the claim pursuant to section 502(a) and Federal Rule of Bankruptcy Procedure 3001(f)." In re Koontz Aviation, Inc., 71 B.R. 608, 610 (Bankr. D. Kan. 1987). Section 502(a) states: "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest … objects." Bankruptcy Rule 3001(f) provides: "A proof of claim executed and filed in accordance with these rules shall constitute *prima facie* evidence of the validity and amount of the claim."

41. In other words, once a claim is filed, the debtor-in-possession "carries the burden of going forward to meet, overcome, or at least equalize, the creditor's evidence." In re Koontz, 71 B.R. at 610. If the debtor carries its burden, then the ultimate burden of persuasion by a preponderance of the evidence remains with the creditor. Id.; see also In re Arndt, 158 B.R. 863, 867 (Bankr. M.D. Fla. 1993).

A.    CLAIM NO. 4 AND AMENDED CLAIM NO.4 ARE NOT *PRIMA FACIE* VALID.

42. As set forth in Bankruptcy Rule 3001(c), when a claim, or an interest in property of the debtor's securing the claim, is based on a writing, the original or a duplicate shall be

filed with the proof of claim. If the writing has been lost or destroyed, a statement of the

circumstances of the loss or destruction shall be filed with the claim. A claim based on a

writing needs supporting documentation when filed in order to be in compliance with the

Bankruptcy Rule 3001 and to be accorded the *prima facie* evidentiary presumption. The

purpose of the rule is to provide the necessary information for the debtor to understand what

the claim is and how it is calculated.

43.    In the Matter of Mendel, 1993 WL 542458 * 2 (N.D. Ga. 1993), the Chapter 13

debtor objected to the IRS Proof of Claim claiming improper assessment and collection

methods. The IRS filed a claim for $82,139.56, which it later amended after the Debtor's

objection, increasing the amount to $195,805.69. See id. The IRS filed a motion for

judgment and sanctions, claiming the objection was frivolous. See id.   Attached to the

motion were Certificates of Assessment and Payments indicating a $65,005.21 tax liability.

See id.  Also attached was an affidavit from an IRS Advisor/Reviewer indicating the

remainder due were penalties and interest which had not as yet been assessed.  See id.

44.    The court relies on Bankruptcy Rule 3001(c) in ruling that the tax liability is

based on the written assessment signed by the IRS officer. See id. at *3. Therefore, "in order

for a proof of claim for income tax liability to constitute prima facie evidence of that claim,

it must be supported by a Certificate of Assessment conforming to the standards outlined

above."(the writing and signature) Id. Since the IRS provided documentation supporting

$65,005.21, that amount was held to be prima facie evidence. See id.

45. In the instant case, the IRS failed to attach any documentation to Claim No. 4 or Amended Claim No. 4. The proofs of claim fail to explain what taxes the IRS is attempting to hold AEM liable for and under what legal authority. The Corporate Representatives of the IRS cite to several documents which were not attached to the proofs of claim and still have not been made available to AEM. Moreover, the IRS did not even produce the underlying Second Quarter Form until over two weeks after discovery had closed and a week before trial.

46. Accordingly, Claim No. 4 and Amended Claim No. 4 should not be afforded the presumption of validity.

B. THE IRS CANNOT MEET ITS BURDEN OF PERSUASION.

47. In the case Cohen v. United States (In re Cohen), 198 B.R.382, 388 (Bankr. S.D. Fla. 1996), the IRS filed a proof of claim based upon a "processed" unsigned joint income tax return. The IRS contended that since a tax liability had been listed on the debtor's schedule for the period in question, it did not matter that the previously submitted joint income tax return was unsigned. See id. However, the debtor subsequently filed her own individual tax return with the IRS which showed that no tax was due and requested a refund. See id. at 385. The IRS subsequently sent the debtor a letter denying the requested refund, See id.

48. The debtor argued that the proofs of claim filed by the IRS supersede the schedules and, as such, there was no tax liability for the year 1983. See id. The IRS argued: (1) that the proof of claims were only to cover the specifically identified years (not 1983),

and relied on the debtor's schedules for the 1983 tax year liability; and (2) that by listing the debt on the schedules, the debtor had "ratified and adopted" her 1983 unsigned joint tax return. See id. at 385-386.

49.   The bankruptcy court held, as a matter of law, that the IRS proof of claims covered all years, and since such did not include 1983, the tax liability was deemed $0. See id. at 387.  The bankruptcy court also held that even if the scheduled claim was valid, it would be disallowed because there was no proof or evidence that any tax was due from the debtor for 1983. See id. at 388.  The IRS had the burden of opposing the debtor's motion for summary judgment by proving a genuine issue of material fact that there was a debt. See id.  The IRS could not locate the tax return for the debtor, the unsigned joint tax return was not effective and otherwise, they had no proof to show a tax debt was due. See id.  at 389.

50.   In the instant case, Mr. Amodeo, allegedly as "Liquidating Agent" for AEM, purportedly submitted the Second Quarter Form.  Although AEM had been requesting the IRS produce complete tax returns since June 2010 and the Court had ordered all documents to be produced by March 31, 2011, the IRS has only recently produced the alleged Second Quarter Form.  However, both Ms. Jaiman and Mr. Williams testified that no one at AEM authorized Mr. Amodeo to file the Second Quarter Form or use AEM's funds to pay the tax liabilities of three non-debtor entities.  Rather both assumed all of AEM's taxes had been paid and whatever Mr. Amodeo was working on, he was doing so under Mr. Gold's authority.

51. Moreover, pursuant to IRS Regulation §31.6061-1, employment tax returns must be signed by: an individual required to make the return; the president, vice-president, or other principal officer of a corporation; a responsible and duly authorized member of a partnership or other unincorporated organization; the fiduciary of a trust or estate; or, a duly authorized agent. In the instant case, neither the first nor second quarter Form 941 quarterly tax return for 2007 was properly signed. AEM Exhibits 14, 15.

52. As in Cohen, the IRS has based Claim No. 4 and the Amended Claim No. 4 on a return that is not valid.. Moreover, it is clear that the IRS did not make a reasonable inquiry into the underlying facts of the claim, either before filing or over the past seventeen months. Finally, the IRS has failed to object or even formally respond to AEM's amended first and second quarter Form 941 tax returns for 2007. See W. Wimbish Deposition, p. 32.

53. The IRS cannot establish by a preponderance of the evidence: (i) the validity or accuracy of Second Quarter Form; (ii) AEM's liability for the 941 taxes of the three non-debtor entities; or (iii) that AEM's 941 tax liability remains unpaid. Without a valid claim against the bankruptcy estate of AEM, the remaining issue before the Court is whether AEM is entitled to a refund to the funds transferred to the IRS in excess of AEM's 941 tax liability.

C. AEM HAS NO OUTSTANDING TAX LIABILITY BECAUSE THE TAX DEPOSITS WERE PROPERTY OF AEM AND ARE SUFFICIENT TO OFFSET ANY TAXES OWED BY AEM.

54. AEM filed amended first and second quarter Form 941 tax returns for 2007, which included only the wages, income and payroll tax liabilities of AEM, and requested the

AEM Refund. <u>AEM Exhibit 17, 18</u>. Although Ms. Ide represented to the Court that the IRS was performing an audit of these amended tax returns, the IRS actually stopped working on the audit in May of 2010. <u>W. Wimbish Deposition</u>, pp. 21-22, 32-33. Furthermore, the IRS has prepared a draft "Notice of Proposed Disallowance," which is "pretty much final," but neither the reasons for disallowing the AEM Refund or the draft report have been provided to AEM. <u>See id</u>. at p. 22.

55.   Prior to 2007, AEM, Presidion VI, Inc., Presidion VII, Inc. and National MedStaff, Inc. submitted their own corresponding Form 941 and Form 944 for their clients's employments taxes. <u>AEM Exhibits 2-11</u>. These returns were completed and signed by the appropriate corporate representative of either AEM, Presidion VI, Inc., Presidion VII, Inc. or National MedStaff, Inc. <u>See id</u>. However, in 2007 the Form 941 taxes were prepared incorrectly and without authority. The Liquidating Debtor disputes the accuracy of both returns and filed amended returns to properly report AEM's Form 941 tax liability.

56.   The funds transferred to the IRS as "tax deposits" for the first and second quarter 941 tax returns for 2007 were not trust funds, but rather constituted property of AEM because all the tax deposits were drawn from AEM's bank account. <u>See R.W. Cuthill Deposition</u>, p. 117. The clients of AEM, as well as Presidion VI, Inc., Presidion VII, Inc. and National MedStaff, Inc., deposited funds for payroll taxes into AEM's bank account. These funds were commingled, dissipated, and rendered untraceable to any particular client of AEM, or Presidion VI, Inc., Presidion VII, Inc. and National MedStaff, Inc.

57.   As stated by the District Court in the case <u>Morin v. Frontier Business</u>

<u>Technologies</u>, 288 B.R. 663, 673 (W.D.N.Y. 2003), the amounts transferred by the debtor

were not trust funds because they had been commingled with other funds and therefore were

not traceable to any particular client. Moreover, addressing the impact of §7501 of the

Internal Revenue Code:

> [E]ven if the funds transferred from [the client] to [the debtor] were trust
> funds at the time of that transfer, once they became commingled with other
> funds, dissipated, and rendered untraceable, the trust was not destroyed, but
> rather, it remained with [the debtor] … Thus, even if [the debtor] should have
> segregated the funds it received from [the client], the fact that it did not
> means that the §7501 trust did not "follow" the dissipated funds, but remained
> with [the client], the taxpayer, which remained obligated to hold the amount
> of withheld funds in trust for the United States. <u>See id</u>. at 674.

58. It has never been in dispute that the funds in the AEM bank account which were

transferred to the IRS were commingled funds. These funds are untraceable and it is

impossible to determine which if any clients from either AEM, Presidion VI, Inc., Presidion

VII, Inc. and National MedStaff, Inc. deposited funds into AEM's account.

59. The IRS has not and cannot establish what alleged trust funds were received by

AEM and which employer sent the funds. Moreover, the IRS cannot establish the underlying

tax liability against AEM, and has not even released the audit report of the amended first and

second quarter Form 941 tax returns for 2007.

60. The IRS has also argued that the funds were held pursuant to a "constructive

trust" or that it would be "unjust enrichment" for AEM to receive the AEM Refund. The IRS

cites no legal or statutory authority for either legal remedy to preclude a refund.

61. In order to establish a constructive trust over the property of a debtor, a party

must: "(i) show either sufficient wrongdoing by the bankrupt in acquiring the property or a fiduciary relationship between the party and the bankrupt; and (ii) be able to **trace** the wrongfully-held property." In re Seneca Oil Co., 906 F. 2d 1445, 1450 (10th Cir. 1990).

62.   However, as stated by the District Court, "Mirabilis did not itself directly own or operate any of the PEOs whose payroll tax funds were misused, and so far as the Court has been able to determine, there is no allegation that a Mirabilis officer, director, or employee ordered (or carried out) the diversion." AEM Exhibit 29 p. 7.  The IRS has not proven any wrongdoing by Mirabilis or AEM, and has admitted that it cannot trace the funds in AEM's bank account.[2]

63.   Accordingly, the funds deposited in the AEM bank account were the property of AEM.  As such, AEM is entitled to a refund of the funds it transferred to the IRS as "tax deposits," which are in excess of AEM's liability.

II.       **THE IRS HAS FAILED TO PRODUCE EVIDENCE SUBSTANTIATING THE DENIAL OF THE AEM REFUND.**

64.   In the Summary Judgement Motion, the IRS argues principally three legal theories as a bar to the recovery of the AEM Refund: (i) the doctrine of voluntary payment; (ii) judicial estoppel; (iii) the variance doctrine.  The IRS has failed to establish facts

---

[2] The IRS has also alleged in deposition testimony that AEM is not entitled to the AEM Refund because AEM has not provided the "statements certifying that AEM or whoever in this case can obtain those refunds because these refunds would have been credited to those individual 1040s when they filed their tax return so." W. Wimbish Deposition, p.19.  However, pursuant to Revenue Ruling 2009-39, 2009-52 I.R.B. 951, 2009 WL 4694630 (IRS RRU), Section 31.6402(a)-2 provides that the aforementioned certification requirements do not apply "if after having made reasonable efforts the employer cannot locate the employee or the employee will not provide consent, or the employee did not provide the required written statement."

supporting the application of any of these legal doctrines.

    A.  THE DOCTRINE OF VOLUNTARY PAYMENT DOES NOT PRECLUDE THE AEM REFUND.

65.  Pursuant to the doctrine of voluntary payment, payments made to the IRS are presumed to have been made voluntarily, and therefore it is incumbent upon the taxpayer to establish either that the doctrine should not apply, or that his or her payments were involuntary.  See Rocha v. United States, 200 F.Supp. 2d 1236 (D.Or. 2002).  However, if the taxpayer takes the position that the payments were made by mistake of fact, fraud, duress or compulsion, all of which are evidence that can deem a payment being made involuntarily, then the taxpayer may seek a refund, if appropriate.  See Sullivan v. Com'rs of Oak Lawn Park Dist., 742 N.E.2d 1057 (D.Ill. 2001).  In some cases, courts have determined that the filing of a lawsuit challenging the validity of a tax was sufficient to render payments made after the filing involuntary, thereby allowing recovery of payments.  See Hoyle v. Faucher, 975 S.W. 2d 843 (1998).

66.  In the instant case, the voluntary payment doctrine does not apply because the payments that were made by AEM were "involuntary" payments.  First, Mr. Amodeo had no authority on behalf of AEM to pay AEM's taxes, let alone the taxes of three non-related entities, and as such, the payments were either a mistake of fact (payment of others' taxes, or payment by fraud).  J. Jaiman Deposition, pp. 29-30.

67.  Second, the only intent that can be inferred from the first and second quarter Form 941 quarterly tax returns for 2007, is that AEM was only attempting to pay its own

taxes.  <u>AEM Exhibits 14, 15</u>.  The IRS keeps referring to "consolidated" Form 941 tax returns, but there is no such form. Unlike the Form 1120, which has an accompanying Form 851 "Affiliations Schedule" identifying all subsidiary corporations and employer identification numbers, the Form 941 has no schedule for the identification of related companies.  Moreover, the Form 941 tax returns which were submitted by Mr. Amodeo do not reference or identify any other entity that AEM is allegedly agreeing to pay taxes for.  <u>See</u> <u>id</u>.

68.  If AEM had wanted to pay the 941 tax obligations of Presidion VI, Inc., Presidion VII, Inc. and National MedStaff, Inc., the AEM would have: (i) identified the three corporations by name and employer identification number; and (ii) filled out Form 2678, "Employer/Payer Appointment of Agent."  AEM did not take either of these steps.

69.  Accordingly, there is clearly an issue of material fact as to whether AEM intended to voluntarily make payments on behalf of Presidion VI, Inc., Presidion VII, Inc. and National MedStaff, Inc. The Summary Judgment Motion on this ground should be denied.

B.  <u>JUDICIAL ESTOPPEL DOES NOT APPLY TO THE AEM REFUND.</u>

70.  The doctrine of judicial estoppel requires a party to show: (i) an unequivocal assertion of fact by a party in one judicial proceeding; (ii) the assertion by that party of an intentionally inconsistent position of law or fact in a subsequent judicial proceeding; and (iii) in order to mislead the court and obtain unfair advantage against the other party. <u>Forty-Eight Insulations, Inc. v. Aetna Cas. & Sur. Co.</u>, 162 B.R. 143 (N.D. Ill. 1993).

71.  In the Eleventh Circuit, the inconsistent positions must have been made under oath and must have been calculated to make a mockery of the judicial system.  <u>Birmingham Steel Corp. v.</u> Tennessee Valley Authority, 353 F. 3d 1331 (11th Cir. 2003).

72.  In addition, the circumstances under which the doctrine is to be applied are still not clear.  As such, the doctrine has only been invoked in cases where the inconsistent positions have been the product of fraud or other deliberately misleading conduct.  <u>Reciprocal Merchandising Services, Inc. v. All Advertising Associates, Inc.</u>, 163 B.R. 689 (S.D.N.Y. 1994).

73.  In the instant case, the IRS has produced no evidence that AEM has taken inconsistent positions regarding the AEM Refund.  This Court has been aware of AEM's position regarding the Claim Objection and the Aem Refund since the Confirmation Hearing.  AEM has not taken any action calculated to make a mockery of the judicial system or any other deliberately misleading conduct.  These unfounded allegations proffered by the IRS are offensive and contrary to the record before the Court.

74.  Accordingly, the doctrine of judicial estoppel is not a bar to the recovery of the AEM Refund.  The Summary Judgment Motion on this ground should be denied.

C.  <u>THE LEGAL DOCTRINE OF VARIANCE DOES NOT PRECLUDE AEM FROM ASSERTING ADDITIONAL LEGAL THEORIES OF RECOVERY OF THE AEM REFUND.</u>

75.  As set forth in <u>Cencast Services, L.P. v. U.S.</u>, 94 Fed. CL. 425 (2010), the variance doctrine bars a taxpayer

> from presenting claims in a tax refund suit that 'substantially vary' the legal
> theories and factual bases set forth in the tax refund claim presented to the

IRS. <u>Lockheed Martin Corp. v. United States</u>, 210 F.3d 1366, 1371 (Fed.Cir.2000); <u>see also Ottawa Silica Co. v. United States</u>, 699 F.2d 1124, 1138 (Fed.Cir.1983) ("[A] ground for a refund that is neither specifically raised by a timely claim for a refund, nor comprised within the general language of the claim, cannot be considered by a court in a subsequent suit for a refund."). Requiring notice of the grounds of the claim ensures that the IRS has an opportunity to administratively correct errors, thus limiting litigation. This court, therefore, lacks jurisdiction to consider complaints asserting arguments at variance with plaintiffs' administrative claims. ... <u>Id</u>. at 438 – 39 (emphasis added, some internal citations omitted)

76.    The court in <u>Cencast</u> discussed the degree of precision required to avoid applicability of the variance doctrine, and noted that "[t]he variance doctrine does not require exact precision; if the issue raised in court 'is derived from or is integral to the ground timely raised in the refund claim,' it 'may be considered as part of the initial ground." <u>Id</u>. at 440 (emphasis added). In <u>Cencast</u> the plaintiffs argued that their claims raised the question of 'which entity is the common law employer?' <u>Id</u>. But, because the plaintiffs did not assert the independent contractor status of certain workers as a basis of their claim for refund and the answer to that question was not implicitly included in the agency's audit investigation, the court held that it was beyond the scope of the plaintiffs administrative refund claims. As such, the independent contractor theory could not be said to be fairly contained within the refund claim and was barred by the variance doctrine. <u>See id</u>. at 441.

77.    There are however certain exceptions to the variance doctrine: (i) the waiver doctrine and (ii) the informal claim doctrine. <u>See id</u>. at 443. The waiver doctrine

[I]s an exception to the requirement in Treasury Regulation § 301.6402-2(b)(1) that each claim be set forth in detail. If the taxpayer files a timely formal claim that fails to include the specific claim for relief, the claim may nonetheless be considered timely the IRS considered that specific claim

within the limitations. Plaintiffs must present specific evidence that they adequately alerted the service to the fact that the item is a ground for refund and the IRS made a determination on the merits as to that claim. Id. (emphasis added, internal citations omitted).

78. To prevail on this argument a party will need to present unmistakable evidence that they notified the IRS of any alternate theory or theories of recovery and that the IRS actually considered and denied that claim. See id. at 445.

79. As stated by the court in Teco Energy v. U.S., 1999 WL 1273727 (M.D Fla.1999)

Even in cases where the taxpayer has not properly raised an issue in its refund claim, the variance doctrine will not bar litigation of the issue in a federal court action if it is shown that the IRS nevertheless consider the issue. In determining whether the IRS has in fact considered an issue in the refund claim which may have been inadequately raised, the Supreme Court has said that '[s]ince … the tight net which the treasury regulations fashion is for the protection of revenue, courts should not unduly help disobedient refund claimants slip through it. The showing should be unmistakable that the Commissioner has in fact seen fit to dispense with his formal requirements and to examine the merits of the claim. It is not enough that in some roundabout way back supporting the claim may have reached him the Commissioner's attention should have been focused on the merits of the particular dispute. The evidence should be clear that he was at the Commissioner understood the specific claim that was made even though there was a departure from form in its submission.' Id. at *5-6, quoting Angelus Milling Co. v. Comm'r [45-1 USTC ¶9310], 325 U.S. 293, 297 (1945).

80. The court in Teco Energy also noted that

In spite of TECO's 'inartful drafting,' it is clear the government understood that the CIAC claim and was focused on its merits. Even with Teco's omission in its refund claim, the government did in fact consider the CIAC matter at all stages of the administrative proceeding and was not unfairly surprised by the issue at trial. … The remainder of the record demonstrates both parties consider the matter as being an issue, if not "the crux" of the case. … (Stating even if the refund claim refers only to a specific issue, it is clear from the other documents in the record that the government also considered broader but related issues when resolving the refund claim, and

the government cannot claim the argument is barred simply because it was not specifically stated in the refund claim). Id. at *7.

81. The informal claim doctrine "allows a timely claim with purely formal defects... if it fairly comprises the IRS of the basis for the claim within the limitations." Cencast Services, 94 Fed. CL. at 447. In this case the court held that the doctrine was inapplicable as the "original complaint was formal, and contained no specific suggestion that plaintiffs would raise other grounds for relief. ...There were no formal defects to be cured in the plaintiffs claims; plaintiffs properly alerted the IRS to very specific list of alleged grounds for refund." Id.

82. In the instant case, it is clear that the IRS has been on notice since prior to the filing of the amended 941 quarterly tax returns that: (i) Claim No. 4 incorrectly included amounts owed by three other non-debtor entities; and (ii) AEM had fully paid its 941 tax obligations. AEM has consistently advised the IRS that:(i) the alleged original first and second quarter 2007 Form 941 quarterly tax returns filed on behalf of AEM were incorrect and not authorized to be filed; (ii) the funds transferred to the IRS during 2007 for the payment of 941 taxes were the property of AEM; (iii) the amount of funds transferred to the IRS during 2007 was in excess of the 941 taxes owed by AEM; (iv) AEM received no value for the payment of the 941 taxes owed by the three non-debtor entities.

83. Although AEM does not know what the IRS considered in auditing the claim for the AEM Refund because the IRS stopped the audit and refused to provide AEM with a final report, the documents provided to the IRS during discovery address the legal theories of

recovery which AEM has made clear to the IRS since October 2009. Moreover, the IRS has been aware since the Confirmation Hearing that the issues to be litigated regarding Claim No. 4 and the AEM Refund involve issues of the validity of the alleged original first and second quarter Form 941 quarterly tax returns, the amount of AEM's 941 tax liability and the fraudulent transfer of funds to the IRS for the debts of three non-debtor entities. The only reason AEM agreed to such a protracted discovery schedule was to alleviate the burden of filing an adversary proceeding against the IRS for the recovery of the AEM Refund.

84.    As such, the IRS has failed to establish that there are no genuine issues of material fact with respect to the application of the variance doctrine. The Summary Judgment Motion on this ground should be denied.

**WHEREFORE,** AEM, Inc., respectfully requests this Court enter an order denying the Summary Judgment Motion, and granting such other and further relief as is just and proper.

**RESPECTFULLY SUBMITTED,** this 22nd day of April, 2011.

> /s/ R. Scott Shuker, Esq.
> R. Scott Shuker, Esquire
> Florida Bar No.: 984469
> Mariane L. Dorris, Esquire
> Florida Bar No.: 0173665
> **LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
> 390 N. Orange Avenue, Suite 600
> P.O. Box 3353
> Orlando, Florida  32802-3353
> Tel: (407) 481-5800
> Fax: (407) 481-5801
> Attorneys for the Liquidating Debtor

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:                                              CASE NO.  6:08-bk-04681-KSJ

AEM, INC.                                           CHAPTER 11

            Debtor.

_____/

### Certificate of Service

   **I HEREBY CERTIFY** that a true copy of foregoing has been furnished by either electronic transmission, facsimile and/or U.S. Mail, postage prepaid to: Internal Revenue Service, P.O. Box 21126, Philadelphia, Pennsylvania 19114; Internal Revenue Service, SBSE: CS: Insolvency, Territory 5, Attn: Insolvency Manager, 400 W. Bay Street, Suite 35045, Stop 5730-GRP 4, Jacksonville, Florida 32202-4437; Chief Special Procedure Function, Internal Revenue Service, P.O. Box 35045, 400 W. Bay Street, Stop 5720-P&II, Jacksonville, Florida 32202-4437; Internal Revenue Service, P.O. Box 21126, Philadelphia, PA 19114; Office of the United States Attorney General, Judicial Center Building, 555 4th Street, N.W., Washington, D.C. 20001; US Attorney General 501 W. Church Street, Suite 300, Orlando, Florida 32805; U.S. Department of Justice, Trial Attorney, Tax Division, P.O. Box 14198, Ben Franklin Station, Washington, D.C. 20044; the Local Rule 1007-2 Parties-in-Interest; and U.S. Trustee, 135 West Central Blvd., Suite 620, Orlando, FL 32801, this 22nd day of April.


                                    /s/ R. Scott Shuker, Esq.
                                    R. Scott Shuker, Esquire