UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:

AEM, INC.,                                    Case No. 6:08-bk-04681-KSJ
                                              Chapter 11

      Debtor.

_____/

**UNITED STATES' REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Although AEM filed a 27-page response to the United States' motion for partial summary

judgment on AEM's refund claim, very little of its response actually addresses matters that are

relevant to the United States' motion.  The few pages at the end of AEM's response that do

address the United States' motion fail to raise any legal or factual issues that would preclude the

Court from granting summary judgment in favor of the United States on AEM's refund claim.

**I.    Pages 1-17 Contain an Irrelevant Discussion of AEM's Objection to the IRS' Claim,
Which Is a Separate Issue Than AEM's Refund Claim**

The first approximately two-thirds of AEM's response addresses its objection to the IRS'

claim.  However, the United States moved for partial summary judgment on AEM's refund

request and not on AEM's objection to the IRS' claim.  As the United States has previously

described, a different burden of proof applies to AEM's refund claim than applies to AEM's

objection to the IRS' claim.  Moreover, there are certain legal doctrines – e.g., voluntary payment

and variance – that are implicated by AEM's refund claim but not by its objection to the IRS'

claim.

Indeed, if the IRS had not filed a claim in this bankruptcy, AEM would not automatically

be entitled to a refund of some portion of the taxes it paid for the 1Q and 2Q 2007.  AEM would

still have to comply with the all applicable statutes, regulations and case law and prove that it

was entitled to a refund.  The same is true if the Court were to sustain AEM's objection to the

IRS' claim – AEM would not be automatically entitled to a refund of some portion of its 1Q and

2Q 2007 taxes.  In order to obtain a refund it would have to again comply with all the applicable

statues, regulations and case law and prove that it was entitled to a refund.  Thus, the validity of

the IRS' claim and AEM's discussion of this issue are not relevant to a resolution of the United

States' summary judgment motion, and the Court need not address or resolve these issues in

order to rule on the United States' summary judgment motion.[1]

## II.     The Remainder of AEM's Response Fails to Raise a Genuine Issue of Material Fact or Show Why the United States Is Not Entitled to Partial Summary Judgment on the Refund Claim as a Matter of Law

### A.     AEM Admits That It Cannot Show It Owned any of the Money Used to Pay the 1Q and 2Q 2007 Taxes Allegedly Attributable to the Other Three Companies

As the United States described in its motion for partial summary judgment, in no event

can AEM obtain a refund of any of the 1Q and 2Q 2007 taxes it paid, because AEM cannot show

that it owned the money that it used to pay those taxes.  That is, AEM cannot obtain a refund of

money that did not belong to it in the first place.

Pages 17-20 of AEM's response relate to this subject.  On pages 17-20 of its response,

AEM alleges that all four companies "deposited funds for payroll taxes into AEM's bank

account" [D.E. 275, pg. 18] and that those "funds were commingled, dissipated, and rendered

---

[1]While the United States does not agree with all of the legal and factual assertions AEM
makes regarding the validity of the IRS' claim, the United States will not address those assertions
in this pleading because they are not relevant to whether the United States is entitled to summary
judgment denying AEM's refund claim.

4839385.1

untraceable to any particular client of AEM, or Presidion VI, Inc., Presidion VII, Inc. and National MedStaff, Inc." [D.E. 275, pg. 18.]  Although AEM then alleges that "the funds deposited in the AEM bank account were the property of AEM" and that AEM is entitled to a refund of that portion of the payments that was attributable to the other three companies, it does so without citation to any authority.  [D.E. 275, pg. 20.]

AEM's response ignores Florida law on the ownership of money in bank accounts.[2]  As the United States explained in its motion for summary judgment, Florida law holds that depositing money in a bank account owned by another does not automatically transfer ownership of the money to the owner of the account.  See Ginsberg v. Goldstein, 404 So.2d 1098 (Fla. 3rd DCA 1981).  Whether ownership of the money is transferred to the owner of the account depends on the intent of the parties.  Id.

AEM has not attempted to come forward with any evidence about whether the other three companies – Paradyme, PBS and National MedStaff – intended to transfer ownership of the money to AEM when they deposited their funds into that account.  Moreover, AEM admits that all four companies deposited money into the account, and that the funds were commingled and rendered untraceable.  Thus, AEM admits that it cannot show how much, if any, of the funds used to pay the 1Q and 2Q 2007 taxes was owned by AEM.

Because AEM cannot show what portion, if any, of the money used to pay the 1Q and 2Q 2007 tax liabilities belonged to AEM, it cannot show that it is seeking a refund of money that belonged to it rather than some other company.

---

[2]Indeed, AEM has failed to address Florida law on this point in any of the several pleadings it has filed subsequent to the United States' motion for partial summary judgment.

4839385.1

**B.      AEM Does Not Genuinely Dispute that It Made Voluntary Payments to the IRS**

As the United States explained in its motion, the IRS' transcripts shows that AEM's payments were voluntarily submitted by AEM and not obtained through forced collection, such as levies.  On pages 21-22 of its response, AEM, for the first time in this case, alleges that its payment of the 1Q and 2Q 2007 taxes was not voluntary.  The response, however, does not raise a genuine dispute that the taxes were not voluntarily paid; it only attempts to argue that those voluntary payments should be treated as involuntary payments.

AEM states first that "Mr. Amodeo had no authority on behalf of AEM to pay AEM's taxes, let alone the taxes of three non-related entities." [D.E. 275, pg. 21.]  It is unclear exactly what AEM means by this statement.  If AEM is asserting that Amodeo was not the proper person pursuant to IRS regulations to sign AEM's tax returns, then that is irrelevant to whether the payments were submitted voluntarily by AEM, and this would not prevent the United States from obtaining summary judgment on AEM's refund claim.  See Combined Industries, Inc. v. United States, 83 Ct. Cl. 613 (1936) (corporation filed consolidated tax return when it was not eligible to do so, but this did not render the payments involuntary such that it could obtain a refund suit).  If AEM is asserting that Amodeo did not have responsibility within the company for tax and other financial matters such that he committed some *ultra vires* act by filing and paying the 1Q and 2Q 2007 taxes, then AEM has not come forward with any evidence to support this allegation and the United States is still entitled to summary judgment.[3]  Indeed, while Amodeo certainly signed the

---

[3]In this discussion, AEM cites to pgs. 29-30 of the deposition of Jodi Jaiman, an officer of Mirabilis Ventures, the parent company of AEM.  These two pages contain questions related to whether Amodeo was an officer or director of AEM and therefore the proper person under IRS regulations to sign its tax returns.

4839385.1

original returns, there is no record evidence whatsoever to establish that Amodeo or anyone else

that AEM might contend was unauthorized **paid** the taxes.

AEM next attempts to transmute its voluntary payments into involuntary payments by

stating that "the only intent that can be inferred" from the 1Q and 2Q 2007 returns was that AEM

was attempting to pay only its taxes and that if "AEM had wanted to pay the 941 tax obligations"

of the other three companies, then it would have "identified the three corporations by name and

employer identification number" and "filled out Form 2678, 'Employer/Payer Appointment of

Agent.'"  [D.E. 275, pgs. 21-22.]  Conclusory arguments by AEM's counsel are no substitute for

record evidence, especially where AEM is seeking a refund, has the burden of proof and

persuasion, and admits that the money was deposited by AEM and the other companies for the

payment of their payroll taxes.  [D.E. 275, pg. 18.]  AEM has not offered a single piece of

evidence that the people at AEM who were responsible for preparing and filing AEM's tax

returns did not intend to pay the liabilities of the other three companies.

AEM's conclusion that "there is clearly an issue of material fact as to whether AEM

intended to voluntarily make payments on behalf" of the other three companies is simply wrong.

[D.E. 275, pg. 22.]  The record evidence shows that the payments were voluntary, and AEM

offers only rationalizations that attempt to turn them into involuntary payments.  AEM has not

offered a single piece of evidence in support of its arguments.  It has offered no evidence to show

---

With respect to who at AEM was responsible for preparing its tax returns, Ms. Jaiman stated that "[t]axes from that perspective were not my responsibility.  I was there to simply sell the business."  AEM has not offered any evidence to show that the company did not fully expect Amodeo to prepare, file and pay its taxes or the taxes of any related entities.  Thus, AEM has not come forward with any evidence to show that AEM's payment of its taxes and the taxes of the other three companies was anything but a voluntary payment by a person at the company who had the responsibility and authority to do so.

- 5 -

that Amodeo was not authorized by the corporation to act on its behalf with respect to tax matters, and it has offered no evidence to show that the corporation did not intend to pay the taxes of the other three companies.  AEM has tried to create a fact issue by offering only attorney argument.  This is insufficient to preclude the entry of summary judgment against AEM.

      **C.**    **AEM Fails to Address Its Deception of Judge Antoon in Its Criminal Case**

On pages 22-23 of its response, AEM purports to address the United States' contention that AEM is judicially estopped from pursing a refund claim because of the arguments AEM made in its criminal case in order to obtain permission to plead nolo contendere – specifically, that AEM deliberately concealed its $25 million refund claim against the United States from Judge Antoon and instead led him to believe that AEM's professional malpractice claims were the only claims that it possessed.  The only meager attempt that AEM makes to address judicial estoppel is by saying that "[this] Court has been aware of AEM's position regarding the Claim Objection and the Aem [sic] Refund since the Confirmation Hearing."  [D.E. 275, pg. 23.]  Such a response completely misses the point of the United States' argument.

AEM is judicially estopped from pursing a refund claim in this bankruptcy not because it concealed the refund claim from this Court but because it deliberately concealed the refund claim from Judge Antoon in its criminal case.  It has made no attempt to dispute that it deliberately misled Judge Antoon.  AEM's actions are precisely the type that require that AEM be judicially estopped from pursing its refund claim in this Court.

      **D.**    **AEM Fails to Offer any Explanation for Its Failure to Assert Lack of Authority to File the Original 941s as a Basis for Its Refund Claim in the Administrative Request That It Filed With the IRS**

On pages 23-27, AEM does not contest that it failed to set forth as a basis for its

4839385.1

December 2009 administrative refund claim the contention that AEM's tax returns were "incorrect and not authorized to be filed" [D.E. 275, pgs. 26] even though that is the ground upon which it intends to rely in this litigation.[4]  Instead, AEM attempts to argue that the variance doctrine does not apply in this case, citing Teco Energy v. United States, 1999 U.S. Dist. LEXIS 18201 (M.D. Fla. October 22, 1999).

Teco Energy, however, reiterates that the Eleventh Circuit "requires that a party requesting a refund strictly comply with the applicable Treasury Regulations requiring specificity" and that "the Court lacks jurisdiction to determine claims that impermissibly vary, augment or are otherwise inconsistent with the grounds originally specified by the taxpayer in its refund claim."  1999 U.S. Dist. LEXIS 18201, at *11 and 13-14.  The case then discussed a limited exception to the variance doctrine: "[i]n cases where the taxpayer has not properly raised an issue in its refund claim, the variance doctrine will not bar litigation of that issue in a federal court action if it is shown that the IRS nevertheless considered the issue."  Id. at *15.  The court in Teco Energy goes on to cite the Supreme Court, which cautions that "the tight net which the Treasury Regulations fashion is for the protection of revenue, courts should not unduly help

––––––––––––––––

[4]AEM points in the facts to a passing reference by Mr. Cuthill in an October 16, 2009 hearing for the authorization argument.  [D.E. 275, pg. 9.]  The variance doctrine, however, requires the taxpayer to raise its arguments in its administrative claim for refund.  AEM does not explain why it did not do so, and, in fact, cited in its administrative claim to inadvertence by AEM, a claim totally inconsistent with lack of authority.

Moreover, as the United States described in its motion in limine, AEM did not raise this ground in its objection to the IRS' claim that it filed in October 2009, in the administrative request for a refund that it filed with the IRS in December 2009, in its responses to the United States' interrogatories that it served in December 2009, in Mr. Cuthill's deposition in May 2010, or in Mr. Bocox's deposition in June 2010.  [D.E. 261, pgs. 9-12.]  AEM's attorney, Mr. Shuker, only raised this ground again nearly a year and a half later at the pretrial hearing on February 25, 2011.  [D.E. 261, pg. 12.]

4839385.1

disobedient refund claimants slip through it.  The showing should be unmistakable that the

Commissioner has in fact seen fit to dispense with his formal requirements and to examine the

merits of the claim."  <u>Id</u>. (internal citation omitted).

While the court in <u>Teco Energy</u> found that the variance doctrine did not preclude Teco

from litigating "the CIAC issue" even though Teco did not state that as a ground for seeking a

refund the administrative request that it filed with the IRS, numerous factual differences make

<u>Teco Energy</u> inapplicable in this case:

1)   In <u>Teco Energy</u> the taxpayer's returns were audited by the IRS, and the IRS agent handling the audit issued an examination report that "included a twenty page analysis of the CIAC issue."  <u>Id</u>. at 16.  In this case AEM's returns were never audited by the IRS, and therefore the IRS never considered this issue and never issued an extensive examination report discussing AEM's allegation that the returns were unauthorized.

2)   In <u>Teco Energy</u> the taxpayer filed an administrative request for a refund prior to bringing its case, the IRS referred "to the CIAC issue in the letter it sent to Teco stating its decision to deny [sic] refund," which stated "'with respect to the CIAC, we feel your position is incorrect, thus it is not accepted.'"  <u>Id</u>. at *8.  In this case AEM did not file its administrative request prior to instituting this litigation, and AEM did not receive a letter from the IRS denying its administrative request and stating that the IRS considered AEM's allegation that the return was unauthorized.

3)   In <u>Teco Energy</u> the taxpayer identified in its complaint that it was seeking a refund based on the CIAC issue.  <u>Id</u>. at *8, fn. 4.  In this case AEM did not identify its ground (i.e. that the return was allegedly unauthorized) in its objection to the IRS' claim or in discovery.

4)   In <u>Teco Energy</u> the court found that throughout the case and even until late in the case "the government continued to treat the CIAC issue as one to be decided on the merits."  <u>Id</u>. at *20.  The government has not considered whether or not AEM's returns were authorized as an issue for litigation throughout this case because AEM never raised that ground in its objection to the IRS' claim or in response to the United States' discovery.  The United States has even moved to exclude AEM from raising this ground at trial precisely because it never raised it during discovery.  [D.E. 261, pgs. 9-16.]

4839385.1

The court in <u>Teco Energy</u> cautioned that its holding that the variance doctrine did not apply in that case was the exception and that it was not intended to disturb the Eleventh Circuit precedent that requires strict compliance with applicable Treasury Regulations: "Given the strict Eleventh Circuit precedent requiring a taxpayer to specify issues in its refund claim prior to filing suit, the Court emphasizes that its decision is based on the cumulative facts of this case." <u>Id</u>. at 19.

The facts of this case are strikingly different than the facts of <u>Teco Energy</u>. Teco raised the "CIAC issue" in its audit, in its complaint, and throughout the litigation. AEM's returns were not audited, AEM did not raise the issue in its objection to the IRS' claim, and AEM did not raise this issue in discovery throughout this litigation. In fact, if AEM knew as far back as October 2009, that it intended to seek a refund on the basis that the returns were allegedly unauthorized, then it has deliberately concealed that ground for nearly a year and a half. Tellingly, AEM has failed to offer any explanation for its failure to state that ground and provide supporting facts in the administrative request for a refund with the IRS, for its failure to identify this ground in its responses to the United States' written discovery, and for the failure of either of its two witnesses – Mr. Cuthill and Mr. Bocox – to mention this basis at their depositions.

If anything, AEM's actions subsequent to the filing of the refund claim merit sanctions, not an exception to the variance doctrine. The variance doctrine applies in this case, and AEM cannot seek a refund on the ground that the returns are allegedly unauthorized.

## III.    Conclusion

AEM spends two-thirds of its motion discussing an irrelevant issue – its objection to the IRS' claim. In the remaining third of its motion AEM fails to come forward with any admissible

4839385.1

evidence to oppose the United States' motion and instead attempts to manufacture disputes of

law or fact that might preclude entry of summary judgment against AEM on its refund claim.

      With respect to the source of the tax payments, AEM admits that the account from which

the tax payments were allegedly drawn contained commingled funds from all four companies and

AEM cannot prove what portion, if any, was owned by AEM.  AEM also fails to address the

applicable Florida law, which holds that AEM did not own all the funds in the account simply

because the account was titled in its name.  Thus, AEM cannot show what it is seeking is a

refund of its own money.

      AEM also cannot produce evidence that the payments of the 1Q and 2Q 2007 taxes were

not voluntary.  AEM tries to spin straw into gold – trying to transmute tax payments that AEM

freely sent to the IRS into "involuntary" payments.  AEM makes various factual <u>assertions</u>, such

as about the intent of the people at AEM who prepared its taxes and made its payments, but it

does not provide any <u>evidence</u>.  AEM sent the payments to the IRS on its own.  They were

voluntary.

      Judicial estoppel also prohibits the refund.  AEM fails to address the statements that it

made to Judge Antoon in its criminal case where it failed to inform him of its $25 million refund

claim against the IRS and led him to believe that its professional malpractice claims were the

only ones it possessed.  What AEM has told this Court is not at issue.  What it told Judge Antoon

merits it being judicially estopped from seeking a refund in this case.

      Finally, with respect to variance, AEM attempts to argue that it should not apply in this

case.  However, AEM failed to explain why, if it knew as far back as October 2009, that it was

going to seek a refund based on the returns allegedly being unauthorized, it concealed that basis

4839385.1

in the administrative request for a refund that it filed with the IRS, in its objection to the IRS'

claim and throughout discovery in this case.  Variance precludes AEM from seeking a refund on

this ground.

AEM has not raised any legal issue or genuinely disputed any factual issue to preclude the

entry of partial summary judgment.  Therefore, the Court should grant partial summary judgment

in favor of the United States and deny AEM's claim for a refund.


JOHN A. DICICCO
Principal Deputy Assistant Attorney General

   /s/ Brian R. Harris
Brian R. Harris (FL Bar No. 512001)
Tax Division, U.S. Department of Justice
P.O. Box 14198
Washington, D.C.  20044
Telephone:  (202) 514-5887, -6483
Fax:  (202) 514-9868
E-mail:  brian.r.harris@usdoj.gov

Of Counsel:

Robert E. O'Neill
United States Attorney

- 11 -

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing UNITED STATES' REPLY IN SUPPORT OF

ITS MOTION FOR PARTIAL SUMMARY JUDGMENT was filed with the EM/ECF system on

May 6, 2011, which will send notice to –

R. Scott Shuker
Mariane Dorris
Justin M. Luna
LATHAM, SHUKER, EDEN & BEAUDINE, LLP
390 N. Orange Ave., Suite 600
Orlando, FL 32801
*Attorneys for Debtors*

Elena L. Escamilla
Office of the United States Trustee
135 W. Central Blvd., Suite 620
Orlando, FL 32806
*United States Trustee*

/s/ Brian R. Harris
Trial Attorney, Tax Division
U.S. Department of Justice

- 12 -